UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————————X

JANE DOE 1, individually, and on behalf of all others similarly situated, JANE DOE 2, individually and on behalf of all others similarly situated, JANE DOE 3, individually and on behalf of all others similarly situated, JANE DOE 4, individually and on behalf of all others similarly situated and JANE DOE 5, individually and on behalf of all others similarly situated,

                Plaintiffs,

vs.

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, FIRST LADY CECILE DE JONGH, GOVERNOR KENNETH MAPP, SENATOR CELESTINO WHITE, ATTORNEY GENERAL VINCENT FRAZER, GOVERNOR JOHN DE JONGH, SENATOR CARLTON DOWE, DELEGATE STACEY PLASKETT, and JOHN DOES 1-100,

                Defendants.

№.: 1:23-cv-10301-AS

**AFFIRMATION OF DANIEL CEVALLOS, ESQ., IN SUPPORT OF MOTION**

———————————————————————————————X

      I, Daniel L. Cevallos, Esq., do hereby affirm, declare and state as follows: I am an attorney admitted to practice in New York and in the Southern District of New York. I am an attorney at Cevallos & Wong LLP, counsel for defendant Governor John de Jongh [Jr.] ("Mr. de Jongh") in the above-captioned Individual and Class Action Amended Complaint [ECF #7, hereinafter the "FAC"].

### RELIEF REQUESTED

1. This Affirmation is being submitted in support of Mr. de Jongh's Motion pursuant to:

    *First.*      Fed.R.Civ.P. 12(b)(1) to **dismiss** the FAC for lack of subject matter jurisdiction, including failure to plead domicile and subject matter jurisdiction; and failure to plead causation for Article III standing;

    *Second.*   Fed.R.Civ.P. 12(b)(2) to **dismiss** the FAC for lack of personal jurisdiction over defendant Mr. de Jongh;

*Third.*       Fed.R.Civ.P. 12(b)(3), 28 U.S.C. § 1406 to **dismiss** the FAC for improper/wrong venue, and failure to plead venue;

*Fourth.*      Fed.R.Civ.P. 12(b)(3), 28 U.S.C. § 140**6**, if not dismissed for improper/wrong venue, to **transfer** the case to the District Court of the Virgin Islands, for improper/wrong venue, failure to plead venue;

*Fifth.*       Fed.R.Civ.P. 12(b)(3), 28 U.S.C. § 140**4** (only if the Court deems venue proper) to **transfer** to the District Court of the Virgin Islands for convenience and in the interests of justice;

*Sixth.*       Fed.R.Civ.P. 12(b)(6) to **dismiss** the FAC for failure to state a claim as to all Causes of Action ("COAs");

*Seventh.*     Fed.R.Civ.P. 12(b)(7), 19, to **dismiss** the FAC for failure to join an indispensable party;

*Eighth.*      Fed.R.Civ.P. 12(f), to **strike** immaterial, impertinent, and scandalous allegations of arrest and loans in the FAC, including those contained in Paragraph 77;

*Ninth.*       New York and/or Virgin Islands statutes of limitations, to **dismiss** the FAC on any of the above grounds with prejudice, because the ASA's one-year "lookback" window expired on 11/24/2023 and any re-filed Complaint would be out of time; and

*Tenth.*       This Court's inherent authority and Fed.R.Civ.P. 1; and

*Eleventh.*    For such other and further relief as this Honorable Court deems necessary and just.

2

#### EXHIBITS

2.   Attached as **Exhibit A** is a true and correct copy of the (first) Amended Complaint and Demand for a Jury Trial ("Amended Complaint" or "FAC") [ECF #7] (hyperlinked).

3.   Attached as **Exhibit B**, pursuant to the Court's Individual Practices Rule 8.G., are nonargumentative charts identifying each cause of action alleged in the FAC, and for each cause of action alleged the elements not plausibly pleaded in the FAC.

4.   Attached as **Exhibit C** is the Affidavit of John de Jongh, Jr. ("Mr. de Jongh") (hereinafter referred to as "de Jongh Affidavit" or "Affidavit").

#### FIVE PARAGRAPHS REFERENCE MR. DE JONGH BY NAME

5.   The FAC specifically mentions Mr. de Jongh in five paragraphs:

> **¶1**: "Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, and Jane Doe 6, individually and on behalf of all others similarly situated file this Amended Complaint against the Government of the United States Virgin Islands (hereafter "USVI"), First Lady Cecile de Jongh, Governor Kenneth Mapp, Senator Celestino White, Attorney General Vincent Frazer, **Governor John de Jongh**, Senator Carlton Dowe, Delegate Stacey Plaskett, and John Does 1-100 for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591 to 1595, and in support thereof allege as follows."

> **¶12**: "Government officials, including but not limited to Defendants First Lady Cecile de Jhong, Governor Kenneth Mapp, Senator Celestino White, Attorney General Vincent Frazer, **Governor John de Jhong**, Stacey Plaskett, and Senator Carlton Dowe facilitated Epstein in his ongoing sex-trafficking operation by ensuring that Epstein received preferential treatment and unfettered, unmonitored freedom while in the USVI, and by providing Epstein and/or his companies instruments which further enabled his sex-trafficking ring and related crimes."

> **¶34**: Defendant **Governor John de Jongh** was, at all relevant times, the governor of USVI.

> **¶72**: Epstein paid hundreds of thousands of dollars to USVI government entities and officials for over two decades, including paying school tuition for **Governor de Jongh's** children. Many of Epstein's payments to politicians were advised and directed by USVI's First Lady de Jongh, a USVI government official, and bought Epstein "loyalty and access" among USVI politicians.

¶**77**: Epstein also freely loaned the de Jongh family money. In 2015, former **Gov. de Jongh** was arrested on charges of using $500,000 of public money to improve his private home. Former **Gov. de Jongh** resolved the criminal case by paying a settlement of $380,000 without admitting wrongdoing, by successfully borrowing $215,000 from Epstein to pay the settlement.

**FAC ALLEGATIONS SPECIFICALLY REFERENCING "NEW YORK" OR THIS DISTRICT**

6. Below are the paragraphs in the FAC referencing "New York" or "this District."

¶**4**. Venue is proper in the United States District Court of the Southern District of *New York,* pursuant to 28 USC 1391(b)(2), because substantial activities occurred in this District including, but not limited to, the following:

¶**4(i).** Epstein's sex-trafficking operation was based, managed and operated out of *New York City, in this District*.

¶**4(ii).** Defendants, their officers, agencies, agents, servants, and/or employees regularly communicated with Epstein about the formation, operation, and maintenance of Epstein's sex-trafficking ring by electronic means, including voice telephone, text message, video telephone or meeting, while Epstein was in his *New York* office and/or residence, in this District.

¶**4(iii).** Epstein and his co-conspirators, including Defendants, knowingly aided and abetted, facilitated, and directly participated in Epstein's illegal venture through financial and non-financial transactions that originated in *this District*.

¶**4(iv).** The commercial acts of sexual abuse, committed by Epstein and certain select friends, took place in Jeffrey Epstein's *New York* mansion, located within this District at 9 East 71st Street, New York City (among other locations, including the USVI). Epstein used his New York mansion to harbor his victims and as a base from which to transport them to other locations outside of New York.

¶**4(v).** Defendants received numerous substantial payments from Epstein's J.P. Morgan Chase New York accounts, as demonstrated below and as set forth in the various filings of both parties in government of the U.S. Virgin Islands v. JPMorgan Chase Bank, N.A.

¶**4(vi).** On at least one occasion, First Lady Cecile de Jongh stayed in one of Epstein's apartments in *New York* for a month in 2017, nearly a decade after Epstein completed his prison sentence for soliciting minors for prostitution, in order to advise and assist him in securing the USVI's cooperation as a safe harbor for his sex-trafficking ring.

¶**4(vii).** Stacey Plaskett, delegate to the U.S. House of Representatives from the USVI's at-large district, visited Epstein at his *New York* mansion to request

that he contribute to her political campaigns, and Epstein and his colleagues paid her campaigns $30,000. Plaskett also visited Epstein at his *New York* mansion to request a $30,000 contribution to the Democratic National Committee, which was ultimately declined because, Plaskett knew, Epstein failed their vetting.

**¶4(viii).** The transportation for the Epstein sex-trafficking ring was owned, stored, and maintained in *New York State*. In particular, Epstein's private jets and vehicles which were used to transport victims and Epstein's clients, or purchased, owned, stored, and maintained in *New York*.

**¶4(ix).** Many of the trafficked women, including Plaintiffs herein, were solicited by Epstein while he was in *New York* and then transported from *New York* to the USVI and held captive and abused in the U.S. Virgin Islands at Epstein's USVI estate.

**¶4(x).** At the time of the events at issue, plaintiffs resided in *New York, New York*, in this district.

**¶4(xi).** Likewise, Epstein solicited many of his co-conspirators for the sex-trafficking ring during meetings held in *New York*, seeking out their interest in engaging in sex crimes before extending invitations to the island, inclusive of his private transportation to avoid publicity.

**¶4(xii).** Epstein also facilitated entry into the United States Virgin Islands for the procurement of travel documents while he was in his *New York* office and/or residence.

**¶¶17-22.** Jane Doe [1-6] is a U.S. citizen and was, at all relevant times, a resident of and domiciled in the State of *New York, New York* County.

**¶48.** In creating and maintaining this network of victims worldwide whom they could force to engage in commercial sex acts, Epstein conspired with others, including Defendants and others who facilitated his conduct by, among other things, recruiting victims, coercing victims, and scheduling their sexual abuse by Epstein at his *New York* mansion, his Palm Beach mansion, and his island in the USVI. Epstein's victims were young women and girls, like Plaintiffs, who suffered severe abuse as Epstein's sex-trafficking victims and who believed they had to remain loyal to the venture at all costs to survive. Epstein victimized hundreds of young women and girls with the assistance of a wide network of co-conspirators, including the USVI and its many government officials and staff.

**¶55.** Epstein transported his victims in interstate and foreign commerce, including transportation to and from his mansion in *this District*.

**¶56.** The Epstein sex-trafficking venture transported victims across state boundaries between *New York*, Florida, and the USVI and elsewhere.

**¶61.** The Epstein sex-trafficking venture operated in and affected interstate and foreign commerce. Epstein recruited, solicited, coerced, harbored, transported,

and enticed some of his victims, including Plaintiffs and others similarly situated, to engage in commercial sex acts in, among other places, *New York* (including the *Southern District of New York*), Florida, and the USVI.

**¶116.d.** Absent a class action, Class Members will continue to suffer losses and be aggrieved and Defendants will continue to violate *New York* and federal law without remedy;

**¶116.g.** The forum is desirable because the Defendants conducted the subject business with Jeffrey Epstein in this District and Class Members were consequently trafficked in *this District*; and,

**¶¶187-192.** Plaintiff Jane Doe [1-6] was sexually abused, forced to engage in commercial sex acts, and trafficked by Epstein and his co-conspirators from 2001 to 2019 in *New York*, Florida, USVI, and around the world.

**¶¶193-198.** Epstein and his co-conspirators committed numerous intentional acts against Plaintiff Jane Doe [1-6] which constitute sexual offenses as defined in *New York* Penal Law § 130, including but not limited to the following:

**¶213.** The injuries that Plaintiff Jane Does 1-6 and the Class Members suffered include injuries directly and proximately suffered as a result of sex offenses committed by Epstein *and other co-conspirators* and criminalized under article 130 of the New York Penal Laws. The offenses included sexual intercourse without consent and oral sexual conduct without consent, forbidden by New York Penal Law § 130.20. The offenses included forcible touching of sexual or other intimate parts without consent, forbidden by New York Penal Law §§ 130.20, 130.35, 130.50, 130.52, and 130.66.

**¶214.** The breaches of legal duties by Defendants proximately caused Plaintiff Jane Does 1-6 and the Class Members to repeatedly suffer injuries from Epstein and his co-conspirators, including sexual assaults and resulting emotional distress, mental pain and suffering, and other physical and psychological trauma. These injuries were easily foreseeable, because Defendants knew, and acted in reckless disregard of the fact, that their actions and omissions supporting and facilitating Epstein would lead to (among other crimes) sex offenses by Epstein and his co-conspirators forbidden by article 130 of *New York* Penal Law against his victims, including Jane Does 1-6 and the Class Members.

**¶215.** In the exercise of reasonable care, Defendants knew or should have known of the dangerous propensities of Jeffrey Epstein and the proximate harm that would be caused by his likely sexual crimes and various violations of article 130 of *New York* Penal Law.

**FAC ALLEGATIONS OF TIMELINESS**

7. FAC's allegations that claims are timely pursuant to 18 U.S.C. § 1595 and the New York Adult Survivor's Act:

> ¶6. This action has been timely filed pursuant to 18 U.S.C. § 1595(c)(1), which provides that a Plaintiffs shall have ten years after the cause of action arose to file suit against any person who knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known violated the laws against sex-trafficking. As the conspiracy continued until 2019, this action is timely. This action is also timely under New York's Adult Survivor's Act.

**PARAGRAPH/ALLEGATIONS TO BE STRICKEN**

8. Mr. de Jongh also asks for the following paragraph 77 to be stricken:

> ¶77. Epstein also freely loaned the de Jongh family money. In 2015, former Gov. de Jongh was arrested on charges of using $500,000 of public money to improve his private home. Former Gov. de Jongh resolved the criminal case by paying a settlement of $380,000 without admitting wrongdoing, by successfully borrowing $215,000 from Epstein to pay the settlement.

Dated: *January 21, 2024*
New York, New York



Daniel L. Cevallos, Esq.
Cevallos & Wong LLP
61 Broadway, Suite 2220,
New York, NY 10006
917.699.5008
Danny@CevallosWong.com

David J. Cattie, Esq.
The Cattie Law Firm, P.C.
1710 Kongens Gade
St. Thomas, USVI, 00802
David.Cattie@Cattie-Law.com
www.Cattie-Law.com
Phone: 340.775.1200
Admitted Pro Hac Vice [ECF #21]

*Attorneys for Governor John de Jongh, Jr.*