**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JANE DOE 1, individually, and on behalf of all others similarly situated, JANE DOE 2, individually, and on behalf of all others similarly situated, JANE DOE 3, individually, and on behalf of all others similarly situated, JANE DOE 4, individually, and on behalf of all others similarly situated, JANE DOE 5, individually, and on behalf of all others similarly situated, and JANE DOE 6, individually, and on behalf of all others similarly situated, | : : : : : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:23-cv-10301-AS |
| v. | : : | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, FIRST LADY CECILE DE JONGH, GOVERNOR KENNETH MAPP, SENATOR CELESTINO WHITE, ATTORNEY GENERAL VINCENT FRAZER, GOVERNOR JOHN DE JONGH, SENATOR CARLTON DOWE, DELEGATE STACEY PLASKETT, and JOHN DOES 1-100, | | |
| Defendants. | | |

**DEFENDANT CONGRESSWOMAN STACEY PLASKETT'S MOTION TO DISMISS**

DUANE MORRIS, LLP
Eric R. Breslin
Melissa S. Geller
1540 Broadway
New York, New York 10036-4086
212-692-1000
erbreslin@duanemorris.com
msgeller@duanemorris.com
*Attorneys for Congresswoman Stacey Plaskett*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTS AND BACKGROUND ...............................................................................2

ARGUMENT ............................................................................................................5

I.    THE COURT LACKS PERSONAL JURISDICTION OVER
      CONGRESSWOMAN PLASKETT................................................................5

      A.    Plaintiffs lack a statutory basis to assert jurisdiction under the Long
            Arm Statute. ......................................................................................... 6

      B.    The Exercise of Jurisdiction Would Offend Principles of Due Process. .......... 9

II.   THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE ..........10

III.  PLAINTIFFS ALLEGE INJURIES THAT ACCRUED OUTSIDE THE
      STATUTE OF LIMITATIONS. ....................................................................11

IV.   PLAINTIFFS RELY ON IMPROPER GROUP PLEADING. ...................................12

V.    PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE
      GRANTED. ....................................................................................................13

      A.    Count I Should Be Dismissed Because Plaintiffs Fail to Raise Any
            Plausible Claim against Congresswoman Plaskett for a Violation of
            the TVPA. ............................................................................................. 15

      B.    Count II Should be Dismissed Because There is No Cause of Action
            for Aiding and Abetting a Violation of the TVPA. ........................................ 16

      C.    Count III Should be Dismissed Because Plaintiffs Fail to Establish a
            Cause of Action for Civil Conspiracy.......................................................... 16

      D.    Count IV Should Be Dismissed Because Plaintiffs Fail to Allege any
            Cause of Action for Negligence against Congresswoman Plaskett................. 17

      CONCLUSION ...............................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) .............................15

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111
(S.D.N.Y. 2021) ...........................................................................................................5

*Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. CV231493ZNQRLS, 2023
WL 8890229 (D.N.J. Dec. 26, 2023) ...................................................................15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................2, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................2, 13

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021)..................................8

*Chen Gang v. Zhao Zhizhen*, No. 3:04-CV-1146 (RNC), 2017 WL 4366967 (D.
Conn. Sept. 30, 2017) .............................................................................................17

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ..................................14

*David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290 (S.D.N.Y. 2019) ...........................17

*Dix v. Peters*, 374 F. Supp. 3d 213 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25 (2d
Cir. 2020) ...................................................................................................................9

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) ....................................15

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023)....................16

*Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456 (S.D.N.Y.
2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023)............................................................. 6-7

*Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69 (2d Cir. 2023) ...............5

*Epstein v. Thompson*, No. 09 CIV. 8696 (HB), 2010 WL 3199838 (S.D.N.Y. Aug.
12, 2010) .....................................................................................................................7

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) ........................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)......................5

*H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) ................15

*Hayden v. Paterson,* 594 F.3d 150 (2d Cir. 2010)........................................................13

*Jackson v. Cnty. of Rockland*, 450 F. App'x 15 (2d Cir. 2011)...................................13

*Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014) ................................................17

*Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, -- F. Supp. 3d --, No. 21-cv-6998, 2024 WL 630422 (E.D.N.Y. Feb. 14, 2024).................................................................11

*May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21CV02891RPKPK, 2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022)....................................14

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ...............................10

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673 (S.D.N.Y. 2021) .........................................................................................................12

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) .........................................................16

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................15

*Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 CIV. 1188 (GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009) .......................................................................7

*Smith v. Husband*, 376 F. Supp. 2d 603 (E.D. Va. 2005) .............................................................11

*Sulaiman v. Laram,* No. 16 CIV. 8182 (CM), 2017 WL 11659746 (S.D.N.Y. Apr. 4, 2017) ..........................................................................................................................11

*Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 CIV. 1616 (RJH), 2011 WL 5838697 (S.D.N.Y. Nov. 21, 2011)..............................................................7, 9

*Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013) ..................................9

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ............................................................................16

*Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012) ............................................................................12

**Statutes and Rules**

18 U.S.C. § 1595..............................................................................................................11, 15

Fed R. Civ. P. 8(a) ................................................................................................................1, 12

Fed. R. Civ. P. 12(b)(2)...............................................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................................13, 15

N.Y. C.P.L.R. 302 .....................................................................................................................6, 9

29 V.I.C. § 701 ............................................................................................................................3

29 V.I.C. § 705...........................................................................................................................14

29 V.I.C. § 707 ................................................................................................................ 3-4

29 V.I.C. § 713(a) – (f) ....................................................................................................... 3

29 V.I.C. § 717 .................................................................................................................... 3

29 V.I.C. § 1100 .................................................................................................................. 2

29 V.I.C. § 1001 .................................................................................................................. 3

**Other Authorities**

161 Cong. Rec. H2 (daily ed. Jan. 6, 2015) ....................................................................... 2

Benjamin Katz, "Now Here's a Job That Comes With A Lot of Baggage," ....................... 18

Fed. Election Comm'n, "Archive of Contribution Limits," ................................................ 8

Homeland Security, "Operational and Support Components," .......................................... 18

Labor Statistics, "Occupational Handbook, Air Traffic Controllers: Work
   Environment," ................................................................................................................. 18

U.S.V.I., Econ. Dev. Auth., "About Us," ........................................................................... 2

U.S.V.I., Econ. Dev. Auth., "EDC Tax Incentives ............................................................ 3

U.S.V.I., Econ. Dev. Auth., "About Us." ........................................................................... 3

Congresswoman Stacey Plaskett submits this memorandum of law in support of her motion to dismiss the Individual and Class Action Amended Complaint filed by Plaintiffs Jane Does 1 through 6 (the "Plaintiffs") on December 13, 2023 (the "Amended Complaint"). As set forth below, this application should be granted.

## PRELIMINARY STATEMENT

Epstein's notorious crimes were reprehensible. Many women unquestionably suffered at his hands. Congresswoman Plaskett has devoted her life to rectifying injustice and is horrified by Epstein's conduct. But the Congresswoman had nothing to do with his criminal conduct and no reason to know it was happening. Plaintiffs do not have the right to malign her good name by claiming otherwise based on nothing but wild speculation stated in conclusory form. It appears the Plaintiffs only named Congresswoman Plaskett in this case is because she is a high-profile Virgin Islands politician, presumably raising the profile of their complaint. Plaintiffs have no basis to suggest there was a nexus between Congresswoman Plaskett and Epstein's crimes.

The Amended Complaint is legally and factually frivolous and was filed with no apparent justification. No aspect of the Amended Complaint survives even the most cursory review. The Amended Complaint should be dismissed for four reasons:

This Court lacks personal jurisdiction over Congresswoman Plaskett.

Second, many of the allegations fall outside the statute of limitations.

Third, the Amended Complaint's reliance on group pleading renders it fatally deficient under Federal Rule of Procedure 8(a).

Fourth, the Amended Complaint consists almost entirely of bare-bones recitations of legal standards or conclusory allegations. All but three allegations either assert no facts or assert

conclusions masquerading as facts.  These conclusory allegations fail to come even close to pleading the elements of a violation of a TVPA or a negligence claim.

The Amended Complaint is exactly the type of pleading the Supreme Court abhorred in *Twombly* and *Iqbal*.  It fails every pleading standard.  The scandalous and reprehensible nature of the allegations serve only to tarnish the Congresswoman's hard-won good name and reputation.  The Amended Complaint should be dismissed.

### FACTS AND BACKGROUND

Congresswoman Plaskett serves as the elected Delegate for the Virgin Islands of the United States to the United States House of Representatives.  She lives in the Virgin Islands and maintains a part time residence in Washington D.C.  (Declaration of Congresswoman Stacey Plaskett ("Plaskett Decl."), ¶ 2).  Congresswoman Plaskett does not reside in New York, maintain a home in New York, or own property in New York.  (*Id.* at ¶ 2).

Congresswoman Plaskett served in the United States Department of Justice from 2002 to 2004.  (*Id.* at ¶ 3).  From 2004 to 2006, she worked as in-house at a major U.S. corporation.  (*Id.* at ¶ 4).  From 2006 to 2007, she worked in private practice at a law firm in the Virgin Islands.  (*Id.* at ¶ 5).  From 2007 to 2012, Congresswoman Plaskett served as the General Counsel for the Virgin Islands Economic Development Authority (the "VIEDA").  (*Id.* at ¶ 5).  She then entered private practice until she was elected to the House of Representatives.  (*Id.* at 7).  In 2014, the people of the Virgin Islands elected Congresswoman Plaskett to represent them Congress.  Gov't of the V.I., Election Sys. of the V.I., 2014 Election Official Results Summary (Nov. 15, 2014).  She was sworn in as a member of the 114th Congress on January 6, 2015.  161 Cong. Rec. H2 (daily ed. Jan. 6, 2015) (announcement of the Clerk).  From that day to the present, Congresswoman Plaskett has served in Congress.

The VIEDA is a semi-autonomous government organization dedicated to economic development in the Virgin Islands.  V.I. CODE ANN. Tit. 29, § 1100; U.S.V.I., Econ. Dev. Auth., "About Us," last visited Mar. 25, 2024 (available at https://www.usvieda.org/about-vieda).  The VIEDA is legally distinct from the government of the Virgin Islands and has its own governance structure.  29 V.I.C. § 1101.  The Virgin Islands Code authorizes tax reductions and tax incentives for businesses that establish operations in the Virgin Islands and individuals who meet residency requirements.  *See, e.g.*, 29 V.I.C. §§ 713a – 713f (describing some of the tax incentives available); *see also* U.S. Virgin Islands, Econ. Dev. Auth., "EDC Tax Incentives" (last visited Mar. 25, 2024) (available at https://www.usvieda.org/residents/grow/edc-tax-incentives).

The Virgin Islands Economic Development Commission (the "EDC") is just one of four functions governed by the VIEDA.  U.S.V.I., Econ. Dev. Auth., "About Us."  One of the EDC's functions is to evaluate applications for certain statutorily authorized "tax breaks."  *See generally* 29 V.I.C. § 701 *et seq.*  The EDC approval process starts with an investigation by the Chief Executive Officer or the Assistant Chief Executive Officer's office.  29 V.I.C. §§ 707, 716.  The Chief Executive Officer then evaluates the application and makes a report and recommendation to the EDC Board (the "Commission").  29 V.I.C. §§ 707, 716.

The Commission must then conduct its own evaluation of the applicant, conduct a public hearing, and, if approval is granted, prepare a report that is signed by the CEO and Chairman of the Commission, which is then sent to the Governor of the Virgin Islands.  29 V.I.C. § 717.  The Governor of the Virgin Islands then makes the determination whether to grant or deny the federally authorized tax benefits package.  (*See* Am. Comp., ¶ 92).  The VIEDA General Counsel is not authorized to and does not make formal recommendations to the EDC or the Governor of

the Virgin Islands as to eligibility for tax incentives.  *See* 29 V.I.C. § 707.  A review of the law of the Virgin Islands would have informed Plaintiffs of this process.

Jeffrey Epstein was a well-known businessman who was accused of operating a worldwide sex trafficking operation in 2019 and before.  (*See* Am. Comp., ¶ 45).  He died in prison while awaiting trial. (*See id*.)  Plaintiffs assert that they are some of his victims.  None of Plaintiffs ever met the Congresswoman, nor does the Amended Complaint offer a plausible set of identifying any nexus between the Congresswoman and Epstein's horrible crimes.  In fact, Congresswoman Plaskett is mentioned in just six paragraphs of the 228-paragraph, 48-page complaint.  In all this paper, there are only four actual allegations against the Congresswoman:

First, Plaintiffs allege that Congresswoman Plaskett was "at all times" an attorney for the EDC, an attorney in private practice in the same firm as Epstein's lawyer, and a representative in the United States House of Representatives.  (Am. Comp., ¶ 36).

Second, Plaintiffs allege that Epstein "and his colleagues" contributed or loaned $30,000 to the Congresswoman's campaign.  (Am. Comp., ¶¶ 4(vii), 78).

Third, Plaintiffs allege that Congresswoman Plaskett solicited Epstein for a $30,000 donation to the Democratic National Committee, which was ultimately rejected and never paid (Am. Comp., ¶ 4(vii)).

Fourth, Plaintiffs allege, on "information and belief" that Congresswoman Plaskett was responsible for recommending that the EDC provide tax breaks to Epstein and his company. (Am. Comp., ¶ 92).  This claim is contradicted by the controlling statute, which specifically vests the Chief Executive Officer and the Commission with this task.  29 V.I.C. § 707.

Based on these limited allegations, Plaintiffs assert four claims:

- Count I, alleging that the Congresswoman violated the TVPA by receiving something of value for participation in a sex trafficking venture;

- Count II, alleging that the Congresswoman aided and abetted Epstein's violations of the TVPA;

- Count III, alleging a conspiracy to violate the TVPA, and

- Count IV, alleging negligence, although the basis of the negligence claim against Congresswoman Plaskett remains unclear.

None of these threadbare, sometimes demonstrably untrue, allegations establishes any nexus between Congresswoman Plaskett and Epstein's crimes, or even that she had reason to know of his crimes. Plaintiffs fail to allege that the Congresswoman did anything wrong or improper at all. The allegations are speculative, slanderous, and have no good faith basis. The Amended Complaint should be dismissed.

## **ARGUMENT**

### I.   THE COURT LACKS PERSONAL JURISDICTION OVER CONGRESSWOMAN PLASKETT.

The Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court cannot exercise general jurisdiction over Congresswoman Plaskett because she is not a domiciliary of New York. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Therefore, Plaintiffs must establish specific jurisdiction.

To exercise specific jurisdiction, Plaintiffs must establish that there is a statutory basis to exercise jurisdiction under New York's long-arm statute and that the exercise of jurisdiction comports with due process. *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023). Plaintiffs must establish personal jurisdiction as to each defendant on each claim and cannot rely on group pleading. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021).

**A.      Plaintiffs lack a statutory basis to assert jurisdiction under the Long Arm Statute.**

The New York long-arm statute, C.P.L.R. 302, allows for the exercise of jurisdiction over a foreign defendant only when the alleged claims arise: 1) from the transaction of business or the supply of goods or services in New York, (2) from the commission of a tortious act within New York, (3) from a tortious act committed outside the state only if the defendant regularly engages in a persistent course of conduct in the state, or could foresee an impact in the state and derives substantial revenue from interstate or international commerce, or (4) from the ownership, use, or possession of property in New York.  C.P.L.R. § 302(a).  None apply here.

Subsection one:  Subsection one does not apply because Congresswoman Plaskett did not "transact business" in the State of New York.  Even if she did, the claims in the Amended Complaint do not arise from the alleged transactions.

Plaintiffs allege that Congresswoman visited Epstein in his home to request a campaign contribution and a donation to the Democratic National Committee that was never paid.  (Am. Comp., ¶ 4(vii)).  Plaintiffs also allege that Congresswoman Plaskett visited Epstein in New York to request a campaign contribution.  (*Id.*)  Plaintiffs further allege that Epstein "and his colleagues" donated or loaned $30,000 to one of her campaigns.  (*Id.* at ¶¶ 4(vii), 78).  These actions do not amount to "transacting business" in the State of New York.

A person "transacts business" in New York when she "purposefully avails [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 473–74 (S.D.N.Y. 2022), *aff'd,* 66 F.4th 69 (2d Cir. 2023) (quoting *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 247 (2d Cir. 2007)).  The primary consideration is the "quality of the

defendants' New York contacts" as viewed by "the totality of the circumstances surrounding the foreign defendant's contacts with the state." *Id.*

The act of discussing a transaction that never materializes does not consist of "transacting business" in New York. *Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 CIV. 1616 (RJH), 2011 WL 5838697, at *11 (S.D.N.Y. Nov. 21, 2011) ("Courts in this Circuit have repeatedly and virtually universally declined to find that such meetings amount to the transaction of business."). Nor does the mere solicitation of a donation in New York. *See, e.g., Epstein v. Thompson*, No. 09 CIV. 8696 (HB), 2010 WL 3199838, at *3 (S.D.N.Y. Aug. 12, 2010) (noting that "solicitation of business within the state does not constitute the transaction of business within the state."); *Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 CIV. 1188 (GEL), 2009 WL 1490852, at *8 (S.D.N.Y. May 27, 2009) (observing "it may not necessarily be the case that a registered charity 'transacts business' in New York anytime it solicits a contribution."); *see also Three Fives Compounds*, 2011 WL 5838697, at *4-5 (noting that meetings subsequent to the formation of a contractual relationship must be essential to the business relationship or substantially advance it to confer jurisdiction).

Even taking as true the allegation that Congresswoman Plaskett requested a campaign donation to the Democratic Party, the donation was never actually paid. (*See* Am. Comp., ¶ 4(vii). The meeting is not alleged to have been essential to any involvement in Epstein's sex trafficking activities, or even related to them. Nor does it appear to have substantially advanced any business relationship. In any event, the donation was never made, and so does not create a basis to assert jurisdiction. *See Three Five Compounds, Inc.*, 2011 WL 5838697, at *11.

Plaintiffs also cannot rely on Epstein's alleged donation or "loan" to the Congresswoman's campaign. Notwithstanding Plaintiffs' allegations, Epstein could only have

donated a maximum amount of between $2,500 and $2,700, depending on the time of the

donation.  Federal Election Rules limit the amount an individual can contribute in any given

year.  Fed. Election Comm'n, "Archive of Contribution Limits," last visited Mar. 25, 2024

(available at https://www.fec.gov/help-candidates-and-committees/candidate-taking-

receipts/archived-contribution-limits/).  What Epstein's colleagues donated, why they donated,

where they donated, and how they donated remain unexplained, but certainly cannot be the basis

to establish jurisdiction over Congresswoman Plaskett in New York.

Plaintiffs also allege that the Court can exercise specific personal jurisdiction because

Epstein sent payments through a New York bank.  (Am. Comp., ¶ 4(v)).  This conclusory claim,

unsupported by any factual detail, cannot support jurisdiction.  *See Berdeaux v. OneCoin Ltd.*,

561 F. Supp. 3d 379, 400 (S.D.N.Y. 2021) (finding no jurisdiction because Plaintiffs offered

only conclusory allegations that "failed adequately to allege any connection among

[Defendant's] conduct, Named Plaintiffs' claims, and New York").  Further, the mere passive

receipt of funds to a campaign entity that were sent through a New York bank by another party

do not create jurisdiction.  *Id.* at 403-04 (finding no jurisdiction where defendant was aware that

funds would pass through a New York bank absent allegations that the defendant "directed the

funds to be deposited or controlled the route of the plaintiffs' funds through the correspondent

account," and collecting cases).

Finally, it is not clear from the Amended Complaint how either of these alleged meetings

"arise from" Epstein's sex trafficking scheme.  They are simply more of Plaintiffs' scattershot

attempts to implicate the Congresswoman at any cost without regard for logic, law, or facts.  The

Amended Complaint provides no plausible explanation as to why she should have known of the

sex trafficking, how she would have learned of it, or what aid she is alleged to have provided. Subsection one does not authorize jurisdiction.

Subsections two and four:  Neither subsection two nor four can apply.  Plaintiffs allege no tortious act in New York (subsection two) and make no allegation that any injury arose from the use of property in New York (subsection four).

Subsection three:  Subsection three cannot apply.  Congresswoman Plaskett does not "regularly engage in a persistent course of conduct in New York" that can have any relation to Plaintiffs claims.  C.P.L.R. 302(a)(3).  Nor does she derive income from commerce either in New York or internationally.  *Id.*  Further, jurisdiction does not attach simply because Plaintiffs are residents of New York.  *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) ("It is well-settled that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction" under section 302(a)(3).").

### B.      The Exercise of Jurisdiction Would Offend Principles of Due Process.

Even if there were a statutory basis to find jurisdiction, the Court must still determine that the exercise of jurisdiction comports with principles of due process.  This is two-pronged inquiry: (1) does the defendant have minimum contacts with New York such that she could anticipate being "haled" into court here, and (2) does the assertion of jurisdiction comport with fair play and substantial justice.  *Three Five Compounds*, 2011 WL 5838697, at *6.

The minimum contacts analysis is similar to the "transacting business" inquiry under C.P.L.R. 302(a)(1).  *See Dix v. Peters*, 374 F. Supp. 3d 213, 223 (N.D.N.Y. 2019), *aff'd*, 802 F. App'x 25 (2d Cir. 2020) ("In assessing a defendant's minimum contacts, a court evaluates the 'quality and nature' of the defendant's contacts.").  Importantly, the analysis focuses on the defendant's contacts with the forum, "not the Plaintiff's connection to the forum."  *Id.* at 223.

As described above, Congresswoman Plaskett has almost no contacts with New York, much less the minimum contacts required by the Fourteenth Amendment.

To evaluate whether fair play and substantial justice support jurisdiction, the courts should conduct a "reasonableness analysis" and consider: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Even if the Amended Complaint could survive a motion to dismiss, it does not belong in New York. Congresswoman Plaskett does not live here and she does not work here. She has not availed herself of the laws of New York in any way related to any allegation in the Amended Complaint. The claims alleged by Plaintiffs all accrued in the Virgin Islands. The Virgin Islands is where all likely witnesses will be located, and the Virgin Islands has the stronger interest in adjudicating this matter. Due process does not permit the exercise of jurisdiction over Congresswoman Plaskett in this jurisdiction.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE

Congresswoman Plaskett joins the motion to dismiss this action for improper venue asserted by co-defendants Government of the Virgin Islands (ECF No. 68), Governor John de Jongh (ECF No. 31), and First Lady Cecile de Jongh (ECF No. 72). The Congresswoman does not state the same briefing here, but relies on the briefing by these co-defendants.

III.    **PLAINTIFFS ALLEGE INJURIES THAT ACCRUED OUTSIDE THE STATUTE OF LIMITATIONS.**

The TVPA claims alleged by Jane Does 4, 5, and 6 are barred by the statute of limitations and should be dismissed.  Plaintiffs' class allegations should also be dismissed for all putative class members with claims accruing prior to November 22, 2013.  A motion to dismiss based on the statute of limitations may be raised by a 12(b)(6) motion to dismiss the complaint where, as here, the defense appears on the face of the complaint.  *Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, -- F. Supp. 3d --, No. 21-cv-6998, 2024 WL 630422, at *4 (E.D.N.Y. Feb. 14, 2024).

Plaintiffs allege one count of violation of the TVPA, (Count One) aiding and abetting the TVPA (Count Two), and conspiracy to violate the TVPA from 2001 to 2019 (Count Three).  Plaintiffs Jane Doe 4 and Jane Doe 5 allege injuries that accrued between 2001 and 2009.  (Am. Comp., ¶¶ 190-191).  Plaintiff Jane Doe 6 alleged injury that accrued in 2004.  (*Id.* at ¶ 192).  Plaintiffs' putative class members include women with claims accruing between 2001 and 2019.  (*Id.* at ¶ 107).  The TVPA is a federal statute and imposes a ten-year statute of limitations.  18 U.S.C. § 1595(c)(1).  The initial complaint was filed on November 22, 2023.  (Comp., ECF No. 1).  Claims predating November 22, 2013 fall outside the statute of limitations.

The continuing conspiracy or continuing violation doctrine does not apply.  Plaintiffs 4, 5, and 6 do not allege continuing injury into the statutory period.  They just try to revive their expired claims by bootstrapping them to timely claims.  *See Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) (defining the continuing violation doctrine as applying where "each of a defendant's acts that cause injury to a plaintiff renews the cause of action for purposes of the statute of limitations); *see also Sulaiman v. Laram,* No. 16 CIV. 8182 (CM), 2017 WL 11659746, at *8 (S.D.N.Y. Apr. 4, 2017) (noting that the continuing violation doctrine is a "disfavored rule that is applied in rare circumstances").  Claims of fraudulent concealment are

11

equally unavailing because Plaintiffs do not bother to offer any factual allegation supporting such a claim.

Finally, claims predating December 19, 2003 should be dismissed because they pre-date the passage of the civil right of action under the TVRA and the civil right of action does not have retroactive effect. *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012).

Jane Does 4, 5, and 6 claims under the TVPA (Counts One through Three) should be dismissed because they predate November 22, 2013. Class allegations pre-dating November 22, 2013 should likewise be dismissed.

## IV.   PLAINTIFFS RELY ON IMPROPER GROUP PLEADING.

The Amended Complaint should be dismissed because it improperly relies on group pleading, making it impossible to determine what Congresswoman Plaskett is said to have done. Plaintiffs "cannot simply 'lump' defendants together for pleading purposes." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 215CV6015(DRH)(AYS), 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017)). The Amended Complaint violates Federal Rule of Civil Procedure 8(a) because it "fails to give each defendant of the fair notice of the claims against [her]." *Id.* at 728-29 (quoting *Holmes v. Allstate Corp.*, No. 11 CIV. 1543 (LTS) (DF), 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012)).

Nearly every allegation in the Amended Complaint relies on "the defendants" or some other group moniker. It is impossible to determine what facts underpin the allegations against Congresswoman Plaskett. Likely, there are none. Congresswoman Plaskett is entitled to a clear statement of the claims against her, not some amorphous, nameless group of generic "defendants." Plaintiffs may not skate past this obligation by lumping all defendants together into an amorphous mass. The Amended Complaint violates Rule 8(a) and should be dismissed.

**V.    PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE
       GRANTED.**

The Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs do

not plead factual allegations sufficient to "nudge" their claims "across the line from conceivable

to plausible." *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  A "plausible" claim requires more than the "sheer possibility that a

defendant has acted unlawfully," particularly when a lawful explanation is equally as likely. *Id.*

at 678-80 (2009) (quoting and explaining *Twombly*).  A complaint pleading facts that are

"merely consistent with a defendant's liability" does not state a plausible claim. *Id.*

Only well-pleaded facts may be considered when analyzing a complaint under Rule

12(b)(6). *Id.* at 679.  The presumption of truth does not attach to "threadbare recitals of a cause

of action's elements," *id.* at 633, or "conclusory allegations masquerading as factual

conclusions," *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (citing *Kirch v.

Liberty Media Corp.*, 449 F.3d 388, 398 (2d. Cir. 2006)).  The Supreme Court suggests using the

two-pronged approach employed in *Twombly*: identify and disregard the mere conclusions

because they are not entitled to the presumption of truth and then consider the remaining well-

pleaded facts against the defendant to determine if they plausibly state a claim. *Hayden v.

Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 662).  Undertaking such an

exercise here, reveals just how defective the Amended Complaint is and the degree of wrong that

has been imposed upon Congresswoman Plaskett by her inclusion in it.

Most of the Amended Complaint relies on recitations of legal standards or bald,

conclusory allegations.  Even some of the "facts" alleged are not true facts.  Plaintiffs attempt to

dress up one conclusory claim by prefacing it with "on information and belief."  Plaintiffs allege

on information and belief, that Congresswoman Plaskett was the EDC attorney "responsible for. .

. recommending that the EDC provides these benefits to Epstein and his companies and enterprise." (Am. Comp., ¶ 92). Simply "plop[ping] 'upon information and belief' in front of a conclusory allegation [does not] render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018). This allegation is entitled to no more deference than the other conclusory allegations in the Amended Complaint.

Facts pleaded "upon information and belief" must either be facts that "are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* at 384–85. "Even then, statements made upon information and belief must be supported by some factual allegations making them plausible." *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21CV02891RPKPK, 2022 WL 4539577, at *4 (E.D.N.Y. Sept. 28, 2022).

These factual allegations are not only lacking in the Amended Complaint, they are directly contradicted by Virgin Islands statutory authority. The Chief Executive Officer or the Assistant Chief Executive Officer, not the General Counsel, is tasked by statute with making recommendations to the Commission:

> The Chief Executive Officer or at his direction, the Assistant Chief Executive Officer shall have the following powers and duties:
>
> (a) Conduct preliminary investigations with regard to all applications for economic development benefits.
>
> (b) Submit his recommendations with regard to economic development benefits applications to the Commission as required under this subchapter.

29 V.I.C. § 705.

Out of the entire complaint then, there are just three "factual" allegations against Congresswoman Plaskett: (1) that she received campaign contributions from Epstein "and his colleagues," (2) that she solicited a $30,000 donation from Epstein for the Democratic National

14

Committee, and (3) that at some unidentified point in time, she served as General Counsel for the EDC when Epstein or his companies received tax breaks.

Plaintiffs plead no other facts in 228 paragraphs. The Amended Complaint fails under Rule 12(b)(6) for the sheer failure to plead facts giving rise to a plausible claim for relief.

### A.     Count I Should Be Dismissed Because Plaintiffs Fail to Raise Any Plausible Claim against Congresswoman Plaskett for a Violation of the TVPA.

The Amended Complaint purports to state a "beneficiary claim" under the TVPA, 18 U.S.C. § 1595, against Congresswoman Plaskett. To state a beneficiary claim for a violation of the TVPA Plaintiffs must establish that: (1) the defendant knowingly received a financial benefit or something of value, (2) from participating in a venture, (3) that the defendant knew or should have known was engaged in a violation of the TVPA. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020) (quoting *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020)). Courts are split as to whether a defendant must have knowledge of a violation against a specific plaintiff or the venture as a whole. *Compare Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725-26 (11th Cir. 2021) (holding that a plaintiff must plead that the defendant knew of a violation as to the plaintiff) *and Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. CV231493ZNQRLS, 2023 WL 8890229, at *4 (D.N.J. Dec. 26, 2023) (holding that a defendant must have knowledge of a violation of the TVPA as to the plaintiff to state a claim) *with G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 556 (7th Cir. 2023) (holding that the TVPA does not require a showing of knowledge a specific victim was trafficked).

The Court need not reach that question here because Plaintiffs must, at a minimum, plead facts that, if known to the defendant, would or should have put her on notice of sex trafficking by a particular venture. *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020); *see, e.g., S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *A.B.*

*v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (dismissing because plaintiff failed to allege facts sufficient to show that defendants received notice that the plaintiff was trafficked).

The Amended Complaint alleges only a campaign contribution donation by Epstein, an inchoate donation to the DNC, and the vague statement that Congresswoman Plaskett worked for or with the EDC sometime between 2001 and 2019.  These allegations do not raise even the specter that Congresswoman Plaskett had any reason to know of Epstein's sex trafficking, much less that she knowingly received a benefit from it.  Count I should be dismissed.

**B.      Count II Should be Dismissed Because There is No Cause of Action for Aiding and Abetting a Violation of the TVPA.**

In Count II Plaintiffs allege liability for aiding and abetting a violation of the TVPA. There is no cause of action for aiding and abetting a violation of the TVPA.  *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018).

Further, under the common law, "the point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue.  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023).  Plaintiffs fail to allege either knowledge or participation by Congresswoman Plaskett.  Count II should be dismissed.

**C.      Count III Should be Dismissed Because Plaintiffs Fail to Establish a Cause of Action for Civil Conspiracy.**

To allege conspiracy, Plaintiffs must that "each defendant. . . 'entered into a joint enterprise with consciousness of its general nature and extent."  *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023) (quoting *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir. 1980).  Plaintiffs must show that a defendant actually agreed to participate in Epstein's sex trafficking venture.  *Id.* (observing that an agreement to provide

banking services with knowledge that they would be used to assist a sex trafficking venture is different than agreeing to participate in a sex trafficking venture).  The "mere assertion of an agreement and actions in line with that agreement" does not suffice to state a claim.  *Chen Gang v. Zhao Zhizhen*, No. 3:04-CV-1146 (RNC), 2017 WL 4366967, at *1 (D. Conn. Sept. 30, 2017).

Plaintiffs do not allege any facts sufficient to infer that Congresswoman Plaskett ever had reason to know of Epstein's trafficking, much less that she agreed to join his operation.  Count Three should be dismissed.

### D.    Count IV Should Be Dismissed Because Plaintiffs Fail to Allege any Cause of Action for Negligence against Congresswoman Plaskett.

Count IV alleges negligence, but the basis for the allegation remains unclear.  Under both New York and Virgin Islands law, negligence requires: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 305 (S.D.N.Y. 2019); *see also Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (stating the elements of a negligence claim as "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff").

Plaintiffs do not indicate what duty Congresswoman Plaskett is alleged to have owed.  What was the duty?  From whence did it arise?  On what basis was it founded?  To whom, specifically, was the duty owed?  The Amended Complaint only vaguely states that the "defendants" had a "duty of care" to ensure that "citizens, aliens, and travelers to Virgin Islands are protected by the Virgin Islands."  (Am. Comp., ¶ 199).  The Amended Complaint offers no clue as to the specifics of any legal duty purportedly owed by Congresswoman Plaskett.

Plaintiffs also allege that she was negligent in carrying out her job.  (Am. Comp., ¶ 206.  Like with much of the Amended Complaint, the allegation is nothing more than a bald,

conclusory statement lacking any supporting facts. It is hard to even know what this allegation is intended to mean. The remainder of the negligence allegations border on nonsensical as they allege actions by federal employees and private companies, not Virgin Islands agents.

Customs agents and the Coast Guard (Am. Comp. ¶¶ 207, 211) fall under the management of the Department of Homeland Security. *See* U.S. Dep't of Homeland Security, "Operational and Support Components," last visited Mar. 25, 2024 (available at https://www.dhs.gov/operational-and-support-components). Air traffic controllers (Am. Comp., ¶ 208) are employed by the Federal Aviation Administration. *See* U.S. Bureau of Labor Statistics, "Occupational Handbook, Air Traffic Controllers: Work Environment," last visited Mar. 25, 2024 (available at https://www.bls.gov/ooh/transportation-and-material-moving/air-traffic-controllers.htm#tab-3). Gate agents and baggage handlers (Am. Comp., ¶ 209) are employed by the airlines. *See* Benjamin Katz, "Now Here's a Job That Comes With A Lot of Baggage," WSJ, Mar. 26, 2023. Only the police are under Virgin Islands control, and nothing supports a claim that Congresswoman Plaskett ever had supervisory authority over the police.

As to Congresswoman Plaskett, Plaintiffs do not plausibly allege duty, breach, or damages. Plaintiffs' negligence claim should be dismissed.

No aspect of the Amended Complaint can survive a 12(b)(6) motion to dismiss. The Amended Complaint should be dismissed.

## CONCLUSION

The Amended Complaint fails every pleading standard. The scant factual allegations pled by the Plaintiffs offer no support for the defamatory, offensive, and baseless allegations leveled against the Congresswoman. Plaintiffs fail to offer any concrete allegations to support

18

the exercise of jurisdiction, venue, or to plausibly state a cause of action for any of the counts alleged.  The Amended Complaint fails in every way possible and should be dismissed.

Dated: March 28, 2024
     New York, New York

                   **DUANE MORRIS, LLP**

                     /s/ Eric R. Breslin
                   Eric R. Breslin
                   Melissa S. Geller
                   1540 Broadway
                   New York, NY 10036-4086
                   (212) 212-692-1000
                   erbreslin@duanemorris.com
                   msgeller@duanemorris.com
                   *Attorneys for Congresswoman Stacey Plaskett*

19