Exhibit B



**DuaneMorris®**

*FIRM and AFFILIATE OFFICES*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR

ALLIANCES IN MEXICO

ERIC R. BRESLIN
DIRECT DIAL: +1 973 424 2063
PERSONAL FAX: +1 973 556 1552
*E-MAIL:* ERBreslin@duanemorris.com

*www.duanemorris.com*

June 10, 2024

VIA EMAIL AND CERTIFIED MAIL RRR

Jordan K. Merson, Esq.
Annette Hasapidis, Esq.
Kimberly A. Kramer, Esq.
Jennifer Plotkin, Esq.
Merson Law, LLC
950 Third Ave., 18th Floor
New York, New York 10022

> **Re:** ___Doe v. Gov't of the U.S. Virgin Islands___, No. 1:23-cv-10301

Counsel:

     Enclosed is a copy of Congresswoman Stacey Plaskett's motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  Be advised that, should you not agree to dismiss Congresswoman Plaskett from this action within 21 days of service of this letter, we will move the court for sanctions.

     Sincerely,

     /s/ Eric R. Breslin
     Eric R. Breslin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JANE DOE 1, individually, and on behalf of all others similarly situated, JANE DOE 2, individually, and on behalf of all others similarly situated, JANE DOE 3, individually, and on behalf of all others similarly situated, JANE DOE 4, individually, and on behalf of all others similarly situated, JANE DOE 5, individually, and on behalf of all others similarly situated, and JANE DOE 6, individually, and on behalf of all others similarly situated, | : : : : : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:23-cv-10301-AS |
| v. | : | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, FIRST LADY CECILE DE JONGH, GOVERNOR KENNETH MAPP, SENATOR CELESTINO WHITE, ATTORNEY GENERAL VINCENT FRAZER, GOVERNOR JOHN DE JONGH, SENATOR CARLTON DOWE, DELEGATE STACEY PLASKETT, and JOHN DOES 1-100, | | |
| Defendants. | | |

---

**NOTICE OF MOTION BY DEFENDANT STACEY PLASKETT**

PLEASE TAKE NOTICE that on a date and time set at the convenience of the Court, Defendant Stacey Plaksett will move before the Honorable Arun Submaranian, United States District Judge for the Southern District of New York, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, for an awarding sanctions against counsel for Plaintiffs Jane Does 1, 2, 3, 4, 5, and 6 under Federal Rule of Civil Procedure 11. Defendant Stacey Plaskett will rely on the accompanying memorandum of law, the Declaration of Stacey Plaskett, and the Declaration of Eric R. Breslin.

Dated:  June __, 2024

**DUANE MORRIS LLP**


      /s/ *Eric R. Breslin*

By:    Eric R. Breslin
       Melissa Geller
       1540 Broadway
       New York, NY 10036
       Telephone: + 1 212 692 1000
       ERBreslin@duanemorris.com
       MSGeller@duanemorris.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JANE DOE 1, individually, and on behalf of all others similarly situated, JANE DOE 2, individually, and on behalf of all others similarly situated, JANE DOE 3, individually, and on behalf of all others similarly situated, JANE DOE 4, individually, and on behalf of all others similarly situated, JANE DOE 5, individually, and on behalf of all others similarly situated, and JANE DOE 6, individually, and on behalf of all others similarly situated, | : : : : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:23-cv-10301-AS |
| v. | : | |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, FIRST LADY CECILE DE JONGH, GOVERNOR KENNETH MAPP, SENATOR CELESTINO WHITE, ATTORNEY GENERAL VINCENT FRAZER, GOVERNOR JOHN DE JONGH, SENATOR CARLTON DOWE, DELEGATE STACEY PLASKETT, and JOHN DOES 1-100, | | |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF CONGRESSWOMAN STACEY PLASKETT'S MOTION FOR RULE 11 SANCTIONS**

DUANE MORRIS, LLP
Eric R. Breslin
Melissa S. Geller
1540 Broadway
New York, New York 10036-4086
212-692-1000
erbreslin@duanemorris.com
msgeller@duanemorris.com
*Attorneys for Congresswoman Stacey Plaskett*

## Contents

PRELIMINARY STATEMENT ................................................................................1

FACTS AND PROCEDURAL HISTORY ...........................................................1

LEGAL ARGUMENT .......................................................................................6

    **A.**    **Counsel violated Rule 11(b)(3) by misrepresenting facts and making inflammatory claims not grounded in fact.** ........................................ 7

    **B.**    **Counsel violated Rule 11(b)(2) by asserting frivolous and baseless legal claims.** ................................................................................ 11

        1.    *The negligence claim (Count V) is objectively nonsensical and lacks any basis in law or fact.* .................................................................. 11

        2.    *The civil RICO claims (Counts III and IV) are objectively frivolous as the SAC fails to meet even the basic prerequisites of a civil RICO claim.* ..... 12

        3.    *The claim for obstruction of enforcement of the TVPA (Count III) is frivolous because the SAC alleges no action taken to obstruct any enforcement.* .......................................................................... 15

        4.    *Counts I and II: The SAC asserts claims for violation of the TVPA and conspiracy to violate the TVPA without factual basis.* ..................... 16

    **C.**    **Counsel filed the SAC in bad faith and with an improper purpose in violation of Rule 11(b)(1).** ....................................................... 16

CONCLUSION ...........................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST), 2024 WL 1956237
 (E.D.N.Y. Mar. 21, 2024) ........................................................................16

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) .......................................15

*Bascunan v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ................................................12

*Boyle v. United States*, 556 U.S. 938 (2009) ........................................................13

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533 (1991).......................6

*D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663 (2d Cir. 2014) ........................................13

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) .........................................................15

*Dimitri Enterprises, Inc. v. Spar Ins. Agency LLC*, No. 21-1722-CV, 2022 WL
 5237811 (2d Cir. Oct. 6, 2022) ......................................................................6

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023)...................15

*First Capital Asset Mgmt., Inc. v. Satinwood*, 385 F.3d 159 (2d Cir. 2004) .......................... 13-14

*Flemming v. Port Auth. of New York & New Jersey*, No. 21-CV-1112 (BMC),
 2021 WL 878558 (E.D.N.Y. Mar. 9, 2021) ...........................................................9

*Goldman v. Barrett*, 825 F. App'x 35 (2d Cir. 2020) ...................................................8

*Goldman v. Barrett*, No. 15 CIV. 9223 (PGG), 2019 WL 4572725 (S.D.N.Y.
 Sept. 20, 2019), *aff'd,* 825 F. App'x 35 (2d Cir. 2020) ...........................................7

*Gov't of the U.S. Virgin Islands v. J.P. Morgan Chase Bank, N.A.*, No. 1:22-cv-
 10904-JSR, ECF No. 1 (Dec. 27, 2022) .......................................................... 3-4

*Heinrich v. Dean*, 655 F. Supp. 3d 184 (S.D.N.Y. 2023)...........................................13

*In re Kunstler*, 914 F.2d 505 (4th Cir. 1990) ....................................................16

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 659 (S.D.N.Y. 1996) ......................12

*LCS Group, LLC v. Shire LLC*, No. 18-civ-2688 (AT), 2019 WL 1234848
 (S.D.N.Y. Mar. 8, 2019) ...........................................................................16

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ........................................14

*Murphy v. Cuomo*, 913 F. Supp. 671 (N.D.N.Y. 1996).............................................8

*O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168 (D. Colo. 2021), ...............7, 10, 16

*Park v. Kim*, 91 F.4th 610 (2d Cir. 2024) ................................................................................7, 11

*Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325
    (S.D.N.Y. Mar. 22, 2024) ...................................................................................................15

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ..............................................................................14

*RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325 (2016) ................................................................12

*Robbins v. Port of $ale, Inc.*, No. ST-12-CV-90, 2018 WL 5024920 (V.I. Super.
    Oct. 10, 2018) ....................................................................................................................11

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432
    (S.D.N.Y. 2004) .................................................................................................................14

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of
    Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991) ...................................................................6

*United States v. Aguilar*, 515 U.S. 593 (1995) .............................................................................15

*United States v. Turkette*, 452 U.S. 576 (1981) ...........................................................................13

**Statutes**

18 U.S.C. § 201.................................................................................................................................14

18 U.S.C. § 1503.............................................................................................................................15

18 U.S.C. § 1512.............................................................................................................................15

18 U.S.C. § 1962........................................................................................................................12-14

29 V.I.C. § 701...................................................................................................................................2

29 V.I.C. § 707...................................................................................................................................9

29 V.I.C. § 716...................................................................................................................................9

29 V.I.C. § 717...................................................................................................................................9

V.I. Code Ann. Tit. 29, § 1100 ........................................................................................................2

**Other Authorities**

161 Cong. Rec. H2 (daily ed. Jan. 6, 2015) .....................................................................................2

Jonathan Stempel, "Jeffrey Epstein Got $300 Million Tax Breaks, Paid US Virgin Islands Police, JP Morgan Says," Reuters, Jun. 20, 2023.................................................. 2-3, 9

Mahita Gajanan, "Here's What to Know About the Sex Trafficking Case Against Jeffrey Epstein," Time, Jul. 8, 2019...........................................................................3

Samuel Goldsmith, "Jeffrey Epstein Pleads Guilty to Prostitution Charges," N.Y. Post, Jun. 30, 2008 ...........................................................................................3

Taylor Nicole Rogers, Erin Snodgrass, Kelsey Vlamis, and Madeline Berg, "Here are all the famous people Jeffrey Epstein was connected to," Business Insider, Jan. 4, 2022 ...........................................................................................................2

Taylor Nicole Rogers, "Here are all the politicians Jeffrey Epstein, the money manager arrested on charges of sex trafficking, has donated to," Business Insider, Jul. 11, 2019.......................................................................................................2

## PRELIMINARY STATEMENT

Rule 11 imposes the duty and obligations on all counsel to conduct a reasonable inquiry; to only file pleadings with a sound basis in law and fact; and to not file an action for an improper purpose. Counsel signed and filed the Second Amended Complaint ("SAC") with a flagrant disregard for these obligations. The SAC makes loud but hollow accusations that Congresswoman Plaskett knowingly joined a destructive sex trafficking ring that harmed hundreds of women for decades. The SAC's claims are seemingly derived from pure invention. They stretch facts to the point of misrepresentation and create a fictional in an attempt to bolster the otherwise conclusory *ipse dixit*. The legal claims asserted are all frivolous, each lacking at least one fundamental well-established element. The full facts and circumstances strongly suggest an improper motive or bad faith on the part of Plaintiff's counsel. The inclusion of Congresswoman Plaskett in this matter and the pleadings in the first Complaint and the Second Amended Complaint are a textbook Rule 11 violation. Congresswoman Plaskett regretfully but respectfully moves for sanctions against Plaintiffs' counsel.

## FACTS AND PROCEDURAL HISTORY

Congresswoman Plaskett has dedicated the past seventeen years to serving the people of the United States Virgin Islands ("USVI"). In 1994 upon graduation from law school, Ms. Plaskett swore the oath of office as an Assistant District Attorney in the Bronx County of New York, where she prosecuted crimes on behalf of the people of Bronx County. (Declaration of Stacey Plaskett ("Plaskett Decl."), ¶ 3) From 1997 to 1999, as a young lawyer, she worked for a private company. (*Id.* at ¶ 4). From 1999 to 2002, she served as counsel on the US House of Representatives Ethics Committee. (*Id.* at ¶ 5). From 2002 to 2004, Congresswoman Plaskett served as the Senior Counsel to the Deputy Attorney General in the Department of Justice. (*Id.*).

In 2007, after two more years in private practice, Congresswoman Plaskett accepted the position of general counsel for the Virgin Islands Economic Development Authority (the "VIEDA"), where she served from 2007 to 2012. (*Id.* at ¶¶ 7-9).

The VIEDA is a semi-autonomous government organization dedicated to economic development in the Virgin Islands. V.I. CODE ANN. Tit. 29, § 1100; U.S.V.I., Econ. Dev. Auth., "About Us," last visited Mar. 25, 2024 (available at https://www.usvieda.org/about-vieda). The Economic Development Commission (the "EDC") is one of four functions of the VIEDA. U.S.V.I., Econ. Dev. Auth., "About Us." The EDC has responsibility for investigating and recommending tax incentives to qualifying companies and individuals. *See generally* 29 V.I.C. § 701 *et seq*. Its function and many of its procedures are defined by statute.

In 2014, after a short time in private practice in the USVI, Congresswoman Plaskett ran for office and was elected to Congress. She was sworn in as a member of the 114th Congress on January 6, 2015, where she has served the people of her community ever since. 161 Cong. Rec. H2 (daily ed. Jan. 6, 2015) (announcement of the Clerk)

All of these facts are easily located through basic internet research.

Jeffrey Epstein was a wealthy financier who was famously well-connected to hundreds of socially and politically active individuals. *See, e.g.,* Taylor Nicole Rogers, Erin Snodgrass, Kelsey Vlamis, and Madeline Berg, "Here are all the famous people Jeffrey Epstein was connected to," Business Insider, Jan. 4, 2022; Taylor Nicole Rogers, "Here are all the politicians Jeffrey Epstein, the money manager arrested on charges of sex trafficking, has donated to," Business Insider, Jul. 11, 2019. Epstein maintained a home in the USVI. He also had financial service-related companies with employees in the USVI. In 1999, his company purportedly applied for and received tax incentives from the USVI for a ten-year term. *See, e.g.,* Jonathan

Stempel, "Jeffrey Epstein Got $300 Million Tax Breaks, Paid US Virgin Islands Police, JP Morgan Says," Reuters, Jun. 20, 2023. His company re-applied and the tax incentives were renewed in 2012. *Id.* For twenty years, between 1999 and 2019, Epstein's companies received approximately $300 million in tax breaks in the USVI. *Id.*

In 2008, Epstein pleaded guilty in Florida for soliciting prostitution from an underage girl. Samuel Goldsmith, "Jeffrey Epstein Pleads Guilty to Prostitution Charges," N.Y. Post, Jun. 30, 2008. This was just the tip of his criminality. In 2019, Epstein was revealed as having operated a world-wide sex trafficking operation. *See* Mahita Gajanan, "Here's What to Know About the Sex Trafficking Case Against Jeffrey Epstein," Time, Jul. 8, 2019. The fallout was public and wide-ranging, with many high-profile individuals alleged to have participated in Epstein's sex trafficking activities.

On December 27, 2022, the Government of the United States Virgin Islands filed suit against J.P. Morgan Chase in the Southern District of New York, alleging that J.P. Morgan Chase profited from Epstein's sex trafficking ring and failed to report his activities. *See Gov't of the U.S. Virgin Islands v. J.P. Morgan Chase Bank, N.A.*, No. 1:22-cv-10904-JSR, ECF No. 1 (Dec. 27, 2022) (the "J.P. Morgan Action"). On June 20, 2023, a public version (partially redacted) of a J.P. Morgan Chase briefing was unsealed (the "J.P. Morgan Filing"). (*See id.* at ECF No. 194 (attached as Exhibit B to the Breslin Decl.)). The J.P. Morgan Filing included claims that Epstein had deep connections to the USVI and USVI politicians. *See id.* The release made national news.

The J.P. Morgan Filing made the following claims about Congresswoman Plaskett: (1) that Epstein supported her for Congress after she worked for the VIEDA, (2) that he and several individuals connected to him donated $30,000 across three campaigns, (3) that she solicited

donations from Epstein, and (4) that he contributed the maximum amount to her campaigns. (J.P. Morgan Filing, pp. 3, 4, 6). The J.P. Morgan Filing made no other allegations and did not accuse the Congresswoman of knowing complicity in Epstein's sex trafficking.

On November 22, 2023, counsel filed the first complaint in this action. (ECF No. 1). On December 13, 2023, counsel filed the First Amended Complaint. (ECF No. 7). The First Amended Complaint asserted claims for violation of the Trafficking Victim's Protection Act ("TVPA"), aiding and abetting the TVPA, conspiracy to violate the TVPA, and negligence. (First Am. Comp., pp. 26, 29, 32, 37). The First Amended Complaint barely mentioned the Congresswoman. It cited just the following facts: (1) that Congresswoman Plaskett worked for a law firm used by Epstein, (2) that Epstein and his "colleagues" contributed $30,000 to her campaign, (3) that the Congresswoman solicited a donation from Epstein for the Democratic Congressional Campaign Committee, and (4) that "on information and belief, Congresswoman Plaskett recommended $300 million in tax breaks for Epstein's companies." (First Amended Complaint, at ¶¶ 4(vii), 38, 78, 92 (ECF No. 7)); Memorandum of Law in Support of Motion to Dismiss First Amended Complaint ("First Motion to Dismiss"), p. 3 (ECF No. 78)).

On March 19, 2024, Congresswoman Plaskett served a letter on plaintiffs' counsel identifying several factual inaccuracies in the First Amended Complaint and pointing out that several of the claims were legally frivolous. (Declaration of Eric R. Breslin ("Breslin Decl."), ¶ 2; Ex. A). The letter warned that, should counsel continue to press the complaint, the Congresswoman would proceed to serve and then file a Rule 11 motion. Plaintiffs' counsel responded right away, indicating that they would consider withdrawing the allegations against the Congresswoman if given access to her deposition in the J.P. Morgan Action. (*Id.*, at ¶ 3).

That deposition was marked "Confidential," but the Congresswoman's counsel agreed to try to get the confidentiality designation lifted. (*Id.*).

On March 28, 2024, Congresswoman Plaskett filed her motion to dismiss to comply with then-existing deadlines, further putting Plaintiffs' counsel on notice of the defects in the First Amended Complaint. (ECF No. 77). On May 13, 2024, just before Plaintiffs' replies were due, Plaintiffs' counsel filed the Second Amended Complaint ("SAC"). (ECF No. 103). Plaintiffs later filed a "corrected" Second Amended Complaint that made some substantive changes to the "factual" allegations, but not the legal claims. (ECF No. 112).

Rather than wait to review the deposition of Congresswoman Plaskett and potentially withdraw the complaint, as had been discussed between counsel, the SAC doubled down on baseless accusations, albeit without the addition of any concrete facts. The SAC took the allegations from speculative into pure fantasy. Recognizing that the First Amended Complaint contained no facts supporting the claims against the Congresswoman, it appears Plaintiffs' counsel made the decision to make up facts many of which are directly controverted by law, regulation, or even a simple internet search. The SAC openly accused the Congresswoman of taking bribes (*see, e.g.,* SAC, ¶¶ 80, 144, 247), it accused her of using her position and her office to further a sex trafficking operation (*see, e.g.,* SAC, ¶ 141), it accused her of facilitating Epstein's access to victims (SAC, ¶ 95), and it accused her of expressly agreeing to join a sex trafficking operation (*see, e.g.,* SAC, ¶ 144). Far from correcting the factual errors and misstatements from the First Amended Complaint, counsel mutated them, crossing the line from questionable exaggeration to outright untruth, fiction, and misrepresentation.

Counsel withdrew the untenable aiding and abetting the TVPA account from the First Amended Complaint, but replaced it with an equally frivolous civil RICO claim. Counsel also

left in the nonsensical negligence claim from the First Amended Complaint.  All the while, it relied on defamatory and inflammatory claims that Congresswoman Plaskett was a knowing participant in Epstein's criminality.   The SAC violates every precept of Rule 11.  The outrageous allegations, the baseless legal claims, and the refusal to correct affirmative misstatements all demonstrate an improper purpose.  Rule 11 sanctions are now warranted.

## LEGAL ARGUMENT

Rule 11 exists to curb abuses in the legal system and deter baseless filings.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 534 (1991).  It "'imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Dimitri Enterprises, Inc. v. Spar Ins. Agency LLC*, No. 21-1722-CV, 2022 WL 5237811, at *2 (2d Cir. Oct. 6, 2022) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).  By signing a pleading, counsel certifies that the pleading is well-grounded in the fact and law and is not bought for an improper purpose.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 542 (1991).  "In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991)

Rule 11 provides for sanctions where: an action is bought for an improper purpose (Rule 11(b)(1); raises claims that are not warranted by existing law or do not constitute a nonfrivolous argument for extending, modifying, reversing, or establishing law (Rule 11(b)(2); and for making factual contentions without evidentiary support (Rule 11(b)(3).  As concerns the SAC, counsel violates all three.

Although some subsections of Rule 11 also provide for sanctions against a party, the Congresswoman is not pursuing sanctions against Plaintiffs at this time.  A review of the SAC strongly suggests that the misrepresentations in the SAC are counsel-driven and counsel-created. As of this filing, the Congresswoman seeks sanctions only against Plaintiffs' counsel.

### A.    Counsel violated Rule 11(b)(3) by misrepresenting facts and making inflammatory claims not grounded in fact.

Misrepresenting facts in a pleading violates Rule 11.  *Park v. Kim*, 91 F.4th 610, 514-15 (2d Cir. 2024).  A lawyer also violates Rule 11 by filing a complaint "containing vague and implausible allegations which he [or she] had to have known were based on no more than speculation." *Goldman v. Barrett*, No. 15 CIV. 9223 (PGG), 2019 WL 4572725, at *5 (S.D.N.Y. Sept. 20, 2019), *aff'd,* 825 F. App'x 35 (2d Cir. 2020).  Counsel may not manufacture allegations and put them in a public court filing without any basis in fact.  *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168, 1201 (D. Colo. 2021), *modified on reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021).  Yet, that is what happened here.  Facts were misstated to the point of falsehood. Other claims were simply fabricated with no basis.

The SAC repeatedly alleges that Congresswoman Plaskett knew about Epstein's sex trafficking operation and expressly agreed to join and extend the operation.  Counsel even alleges that Congresswoman Plaskett acted to facilitate Epstein's access to the Plaintiffs and other victims.  (SAC, ¶ 95 ("Plaskett entered into agreement [*sic*] with Epstein. . .to facilitate the sex trafficking venture. . .to ensure Epstein's clients co-conspirators, and co-defendants. . .had access to victims and Plaintiffs.").  The SAC repeatedly alleges that the Congresswoman abused her office to aid Epstein in exchange for money and influence, overtly accusing her of accepting bribes.  (*See, e.g.,* ¶ 144).

Counsel included no facts to support these outrageous claims because they do not exist. No filing, deposition, news article, or any other source of information supports any of these outrageous claims. There is no evidence in the public record or anywhere else that Congresswoman Plaskett knew anything about Epstein's sex trafficking, much less that he asked her to or that she did anything in furtherance of it. The "federal courts 'cannot tolerate complaints grounded solely on metaphysical inferences nor those filed without an informed basis for the allegations.'" *Murphy v. Cuomo*, 913 F. Supp. 671, 683 (N.D.N.Y. 1996) (quoting *In re Keegan Mgmt. Co.*, 154 F.R.D. 237, 242 (N.D. Cal. 1996) (awarding Rule 11 sanctions); *see also Goldman v. Barrett*, 825 F. App'x 35, 38 (2d Cir. 2020) (affirming Rule 11 sanctions and noting "'speculation that conversations may have taken place ... provides no support' for allegations as to the content of those conversations.'" (quoting the decision below)).

Counsel was apparently aware that the First Amended Complaint was light on facts, especially after Congresswoman Plaskett's counsel alerted them to their obligations under Rule 11. Undaunted by the lack of any actual facts, counsel exaggerated or outright misrepresented what little information they were able to glean from the J.P. Morgan Filing.

For example, Paragraphs 164 and 165 make the repeated claims:

> 164. The ultimate decision to provide such tax breaks was made by the USVI governor. Plaskett was the attorney on the EDC responsible for, upon information and belief, recommending that the EDC provides these benefits to Epstein and his companies and venture.

> 165. These tax breaks amounted to $300 million in direct benefits to Epstein and his companies and venture.

*See also* (SAC, ¶ 7 ("GC for EDC, $300 million tax breaks despite being sex offender); ¶ 51 ("Defendant Stacey Plaskett was. . .the attorney for the USVI's EDC when it approved over $300 million in tax breaks for Epstein's companies).

This is not true, as is clear from a five-minute Google search.  Epstein's companies received $300 million in tax incentives over twenty years, beginning in 1999.  (Breslin Decl., Ex. B (J.P. Morgan Filing), at p. 6); Jonathan Stempel, "Jeffrey Epstein Got $300 Million Tax Breaks, Paid US Virgin Islands Police, JP Morgan Says," Reuters, Jun. 20, 2023.  Epstein's companies were approved for ten years of tax incentives starting in 1999.  *Id.*  They were renewed for a five year term, apparently retroactively, in 2012.  *Id.*  They were renewed again in 2013, after Congresswoman Plaskett had left the VIEDA, for anther ten year-term.  *Id.*  Epstein's companies received the vast bulk of the tax incentives under the 1999 approval.  *Id.* ($219.8 million between 1999 and 2012 and $80.6 million between 2013 and 2018).

This was not a product of shoddy drafting; it is outright misrepresentation.  The cornerstone of the SAC is the claim that the Congresswoman secured $300 million in tax incentives for Epstein to facilitate his sex trafficking, in exchange for money, influence and a job.  (*See, e.g.,* SAC, ¶ 6; SAC, ¶¶ 140-143, 151).  All information in the public record establishes that this claim is affirmatively and provably false.

Equally false is the claim that Congresswoman Plaskett recommended tax incentives for Epstein's companies. (*See* SAC, ¶ 164).   As the VIEDA statutes set out, the general counsel does not make recommendations to the governor.  The Board of the EDC makes recommendations to the governor in a written report after the EDC conducts an investigation and holds a public hearing.  29 V.I.C. §§ 707, 716-717.  The Chaiman of the Board of the EDC makes those recommendations to the governor upon a hearing with the Board members, not the general counsel.  Slyly prefacing the claim with a blanket "on information and belief" does not absolve counsel from its obligation not to assert baseless, speculative, or untrue facts.  *Flemming v. Port Auth. of New York & New Jersey*, No. 21-CV-1112 (BMC), 2021 WL 878558, at *2

(E.D.N.Y. Mar. 9, 2021).  Counsel was aware of these facts.  They were addressed in both the March 19, 2024 Letter, and the First Motion to Dismiss.

The SAC also makes the claim that Congresswoman Plaskett received "regular and routine payments" from Epstein, "disguised as campaign contributions."  (SAC, ¶ 145).  There were no regular payments.  The SAC identifies two campaign contributions in 2016 (one for the primary and one for the general) and one campaign contribution in 2018.  (*Id.*, ¶ 146).  To say these are "regular and routine payments" is, at best, a wild exaggeration.  Nor did that money go to the Congresswoman – it went to her campaign, donations to which are public record and accessible on the website of the Federal Election Commission.  There is absolutely no evidence at all to suggest that Epstein hosted a fundraiser for her because he did not.  (*Id.* at ¶ 6).

Lawyers may file documents containing inflammatory claims that would be considered defamatory in any other context without fear of legal retribution.  *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d at 1204–05.  But, "along with a law license and the associated privilege to make arguably defamatory allegations in judicial proceedings comes the sworn obligation of every lawyer, as an officer of the court and under Rule 11, not to abuse that privilege by making factual allegations without first conducting a reasonable inquiry into the validity of those allegations."  *Id.*

The false allegations in the SAC are inflammatory and outrageous.  Under any other circumstances, they would likely be subject to a defamation suit.  The misconduct permeates the SAC.  Congresswoman Plaskett has dedicated almost the entirety of her professional life to public service.  The irresponsible and scurrilous allegations in the SAC, obviously made in bad faith, are beyond the pale.  Counsel had no basis to include her in this case solely because she worked for a quasi-government organization that gave lawful tax breaks to Epstein years before

his sex trafficking was revealed, or because she received campaign donations (as did many other high-profile politicians. The filing of the SAC, even after being advised of the violations from the First Amended Complaint exacerbated the misconduct and is the pinnacle of bad faith. Counsel may not damage and defame the life and reputation of another person with fabrication and deception in search of a quick settlement or publicity. Counsel violated Rule 11(b)(3) in every possible measure. Significant sanctions are appropriate.

### B.    Counsel violated Rule 11(b)(2) by asserting frivolous and baseless legal claims.

A legal claim is frivolous where it is not warranted by existing law or by a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Park*, 91 F.4th at 614 (quoting Fed. R. Civ. P. 11). All five causes of action in the SAC are frivolous.

    1.    *The negligence claim (Count V) is objectively nonsensical and lacks any basis in law or fact.*

Negligence, derived from centuries of common law, arises where there is: 1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Robbins v. Port of $ale, Inc.*, No. ST-12-CV-90, 2018 WL 5024920, at *4 (V.I. Super. Oct. 10, 2018) (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014)).

There is no basis to infer a legal duty of care owed by Congresswoman Plaskett to any Plaintiff or any potential class member under any reading of the SAC. She had no responsibility as a law enforcement officer, no supervisory responsibility over any law enforcement, and no role directly in the government of the USVI (the VIEDA is a semi-autonomous company and Congress is part of a branch of the federal government).

The claims of supervisory authority are also objectively absurd, as has been pointed out to counsel in both the March 19, 2024 Letter and the First Motion to Dismiss, among other areas.

11

The SAC alleges failure to supervise federal agents (United States Customs officers, the United States Coast Guard, and Air Traffic Controllers) and privately employed airline baggage handlers. Federal officers are under the control of their respective federal agencies, not Congresswoman Plaskett. Only the USVI police are under territorial control, and Congresswoman Plaskett, first as a private citizen and then as a congressional elected official, never had supervisory authority over the USVI police.

The negligence claim is objectively frivolous.

2.      *The civil RICO claims (Counts III and IV) are objectively frivolous as the SAC fails to meet even the basic prerequisites of a civil RICO claim.*

A civil RICO claim has "an almost inevitable stigmatizing effect on those named as defendants." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 659 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990)). Consequently, "Rule 11's deterrence value is particularly important in the RICO context." *Id.* It is clear counsel did not make any attempt to identify and parse the elements of a RICO claim.

As a threshold matter, Plaintiffs claim only personal injuries. A RICO claim requires an economic injury (it is written right into the statute); there is no RICO claim for personal injury. 18 U.S.C. § 1964(c) ("[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor. . ."); *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 350, (2016) (noting that the RICO private right of action excludes personal injury claims); *Bascunan v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) (noting a plaintiff cannot recover for personal injuries under RICO).

Second, even the manufactured "facts" in the SAC do not coalesce into a cognizable RICO claim, as would have been obvious to counsel had they done even basic research into a

civil RICO claim.  Most of the missing elements are the subject of long-settled Supreme Court case law, and not even arguably questionable.

The alleged enterprise lacks the basic, long-recognized structural features necessary to establish a RICO enterprise.  *Boyle v. United States*, 556 U.S. 938, 946 (2009) (A RICO enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."); *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (noting participants in a RICO enterprise must have a common purpose and intent); *Heinrich v. Dean*, 655 F. Supp. 3d 184, 190 (S.D.N.Y. 2023) ("Courts in the Second Circuit look to the 'hierarchy, organization, and activities' of an association-in-fact to determine whether its members function as a unit.).

The SAC also does not allege an organization distinct from its actors, *First Capital Asset Mgmt., Inc. v. Satinwood*, 385 F.3d 159, 173 (2d Cir. 2004), or the alleged predicate acts, *United States v. Turkette*, 452 U.S. 576, 583 (1981).  *See also D. Penguin Bros.*, 587 Fed. Appx. at 668 ("Plaintiff's complaint gives no basis for inferring that these two defendants in isolation formed 'an ongoing organization, formal or informal,' let alone a coherent 'entity separate and apart' from the alleged fraudulent scheme.").  To the extent the SAC pleads anything substantive, it pleads an operation run by Epstein, for Epstein, to further Epstein's goals, into which others allegedly contributed for their own purposes.  *See D. Penguin Bros.*, 587 F. App'x at 668 (finding no enterprise alleged in part because the complaint failed to allege the defendants acted on behalf of the enterprise instead of in their own individual self-interest).

Counsel cannot make a plausible claim that Congresswoman Plaskett invested in, maintained an interest in, or participated in any RICO enterprise.  The SAC does not identify

13

which RICO subsection it relies on (problematic in itself), but it must be § 1962(c), as (a) and (b) clearly do not apply. *See* 18 U.S.C. § 1962(a) (investing racketeering proceeds into a racketeering enterprise); 18 U.S.C. § 1962(b) (acquiring an interest in or control of a racketeering enterprise). This latest attempt to implicate the Congresswoman cannot cobble together a remotely plausible claim that Congresswoman Plaskett "participated in the operation or management of the enterprise itself," a basic, long-settled, element of pleading a claim under § 1962(c). *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (noting a RICO defendant must do more than "merely take direction or take action that benefits the enterprise.").

The SAC fails to plead any predicate acts by the Congresswoman, much less a pattern of racketeering activity consisting of at least two predicate acts in a ten-year period. *Satinwood*, 385 F.3d at 178. The SAC fails to plead the elements of any predicate acts at all. *See Mackin*, 59 F. Supp. 3d at 546 (noting a party must plead the elements of the predicate acts). The SAC does not identify a specific criminal statute or violation by Congresswoman Plaskett. At best, the SAC seems to be groping towards a violation of the federal bribery statute, 18 U.S.C. § 201. There is no non-frivolous basis to assert a violation of the federal bribery statute in the SAC, not least because the SAC fails to identify a single actual action taken by Congresswoman Plaskett on behalf of Epstein while she held federal office. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 553 (W.D.N.Y. 2014) (noting that the elements of the federal bribery law as a federal official taking or demanding something of value with the specific intent that it be in exchange for the official undertaking an official act or neglecting to exercise a required duty).

The SAC also fails to allege the required continuity of a pattern of racketeering activity. *Satinwood*, 385 F.3d at 180. There can be no open-ended continuity; Epstein is dead and there is

no threat of ongoing criminal activity beyond 2019. *See DeFalco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001) ("To establish open-ended continuity, "the plaintiff. . .must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." (quotations omitted)). There is no non-frivolous basis to allege close-ended continuity, primarily because the SAC fails to allege a series of related predicate acts extending over a substantial period of time, amounting to "continued criminal activity." *Id.* at 321.

Finally, the RICO conspiracy claim (Count IV) is entirely frivolous. The substantive RICO claim is frivolous, so there can be no RICO conspiracy without a substantive RICO offense. *Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325, at *20 (S.D.N.Y. Mar. 22, 2024). Further, counsel cannot rely on speculative fantasies to allege a non-existent agreement. The SAC contains no substantive allegation supporting even an inference of an agreement. The claim is frivolous.

> 3. *The claim for obstruction of enforcement of the TVPA (Count III) is frivolous because the SAC alleges no action taken to obstruct any enforcement.*

There can be no obstruction without an enforcement effort to obstruct. *See Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023) (stating the elements of obstructing the enforcement of the TVPA as (1) knowledge of an effort to enforce the TVPA, and (2) an intentional action to obstruct or attempt to obstruct enforcement); *c.f. United States v. Aguilar*, 515 U.S. 593, 599 (1995) (holding that obstruction under 18 U.S.C. § 1503 requires intent to obstruct a judicial proceeding); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005) (holding that obstruction under 18 U.S.C. § 1512 requires a showing that the defendant at least foresaw a proceeding).

The SAC does not even attempt to allege an effort to impede enforcement of a known effort. (*See* SAC, ¶¶ 243-261). The claim is frivolous.

15

           4.       *Counts I and II: The SAC asserts claims for violation of the TVPA and conspiracy to violate the TVPA without factual basis.*

Counts I and II purport to allege violations of the TVPA and conspiracy to violate the TVPA. Counsel filed these allegations with absolutely no factual basis. The SAC is full of offensive, conclusory claims that Congresswoman Plaskett knew of Epstein's sex trafficking and agreed to facilitate it. Counsel had no factual basis to make these claims, and no factual basis to allege a violation of the TVPA or conspiracy to violate the TVPA. This is a violation of Rule 11(b)(2) and a dereliction of counsel's obligations as a lawyer and, frankly, common decency.

## C. Counsel filed the SAC in bad faith and with an improper purpose in violation of Rule 11(b)(1).

The circumstances behind the filing of the SAC strongly imply an improper motive. Counsel "dump[ed] into a public federal court pleading allegations of a RICO conspiracy that [are] utterly unmerited by any evidence," demonstrating substantial bad faith. *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168, 1205 (D. Colo. 2021), *modified on reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021). The allegations were outrageous and inflammatory. *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990) ("Repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose.").

The SAC itself is "so baseless as to suggest that there is an ulterior motive behind the lawsuit." *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST), 2024 WL 1956237, at *3 (E.D.N.Y. Mar. 21, 2024). Counsel actually re-filed many of the factual misstatements and frivolous legal claims from the First Amended Complaint, even after being advised they were baseless and probably sanctionable. Counsel went further and added an equally deficient and inflammatory RICO allegation. *See LCS Group, LLC v. Shire LLC*, No. 18-civ-2688 (AT), 2019

WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019) (imposing sanctions where plaintiff amended complaint to add a frivolous RICO allegation).

These are not errors of an inexperienced attorney. Counsel here holds themselves out as very experienced and well regarded. Mr. Merson advertises himself as "one of the top lawyers in New York and the United States." (MersonLaw.com). According to the Merson Law website, Mr. Merson was named a top 100 lawyer in New York in 2024, was recognized as one of the top 200 lawyers in America by Forbes, and was selected for the "New York Law Journal's "Hall of Fame" in 2014. Mr. Merson appears as an attorney on 39 cases in Pacer in this court alone.

In this case, however, Mr. Merson and his colleagues disregarded their obligations as officers of the court. Perhaps they believed including the Congresswoman in their complaint would garner publicity, or that some defendants would put pressure on other defendants to settle quickly. Perhaps they just wish to wound for some unknown insidious purpose. Certainly, the fact that they are using their clients as a conduit in that effort is reprehensible. Congresswoman Plaskett submits that substantial sanctions are warranted.

## CONCLUSION

Counsel made awful claims in the SAC, alleging some of the worst forms of criminality, based on nothing but pure invention. It covered the fatal gaps in the SAC with figments of their imagination and took extreme liberties with the few actual facts they appear to have gleaned from a single source. Counsel simply ignored widely known facts that controvert the allegations in the SAC. Doing so not only damages Congresswoman Plaskett but damages the Plaintiffs they have an obligation to represent. They filed the Second Amended Complaint ("SAC") with no regard for the damage their actions could do or their obligations as officers of the Court. It is

clear no reasonable inquiry into either the law or the facts was undertaken.  Sanctions are

warranted.


Dated: June ___, 2024
        New York, New York

                                        **DUANE MORRIS, LLP**

                                          /s/ Eric R. Breslin
                                        Eric R. Breslin
                                        Melissa S. Geller
                                        1540 Broadway
                                        New York, NY 10036-4086
                                        (212) 212-692-1000
                                        erbreslin@duanemorris.com
                                        msgeller@duanemorris.com
                                        *Attorneys for Congresswoman Stacey Plaskett*