UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, *et al.* | ) |
| Plaintiffs, | ) |
| v. | ) Case Number: 1:23-cv-10301-AS |
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, *et al.* | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANT GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS**

1.      **Plaintiffs Have Not Established Personal Jurisdiction Over the Government**

Plaintiffs do not refute that principles of federalism and comity preclude this Court from requiring the Government to defend the propriety of actions taken pursuant to its own laws (for example, issuing a reduction of SORNA's travel notice requirement) in a foreign court. Mot. Dismiss ("MTD") at 9-10.

In addition, the mere "passive[] and unilateral[]" receipt of funds from a third party allegedly sent from New York does not form a sufficient basis for personal jurisdiction. *Amigo Foods Corp. v. Marine Midland Bank-New York*, 402 N.Y.S.2d 406, 408 (1st Dep't 1978). Plaintiffs thus argue the Court should credit their conclusory and unfounded allegations that the Government "directed" payment to the Government "from New York." Opp'n at 20-21. Plaintiffs do not cite a single case establishing that directing payment from New York constitutes "transacting business" under CPLR § 302(a)(1). Each of Plaintiffs' cases involves instances where the defendants conducted business through an agent located in New York[1] or by effecting multiple transactions through correspondent bank accounts that the foreign bank defendants maintained in New York.[2] *Skutnik v. Messina*, 113 N.Y.S.3d 195, 198 (2d Dep't 2019), demonstrates the flaws in Plaintiffs' reasoning. In that case, the defendant directed payment into the defendant's New York bank account. Id. at 198. There is no similar allegation here.

Further, the Court "need not 'credit a complaint's conclusory statements without reference to its factual context'" and "where a conclusory allegation in the complaint is contradicted by a

---

[1] *Barbarotto Int'l Sales Corp. v. Tullar*, 591 N.Y.S. 188 (2d Dep't 1992) (agency agreement with plaintiff); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 473 (N.Y. 1988) (co-defendant used as New York agent); *Fischbarg v. Doucet*, 9 N.Y.3d 375 (N.Y. 2007) (defendants hired plaintiff to perform legal work in New York).
[2] *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 328 (N.Y. 2016) (foreign defendant "repeatedly approve[d] deposits and the movement of funds through" its New York bank account); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 19 (S.D.N.Y. 2016) (bank maintained New York branch).

document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)). The "factual context" here—the emails attached to the Complaint as the basis for Plaintiffs' allegations—demonstrate that Plaintiffs have no basis for their conclusory claim that the Government[3] "directed" any payment "from Epstein's New York bank accounts." Opp'n at 20-21. None of the emails even mention New York.[4]

Plaintiffs further claim the Government "gave Epstein and/or his entities tax incentives, when all such funds derived from New York bank accounts." Opp'n at 22. The "economic development program" Plaintiffs reference permits "USVI residents [to] exempt from income tax 90 percent of their 'income . . . effectively connected with the conduct of a trade or business within the Virgin Islands.'" *Coffey v. C.I.R.*, 663 F.3d 947, 949 (8th Cir. 2011) (quoting 26 U.S.C. § 934(b)(1)). Even assuming for sake of argument the EDC were not separate from the Government, MTD at 21, there is no payment of funds from New York or anywhere else involved with this administration of Virgin Islands statutes.

Left with no alternative, Plaintiffs seek to premise jurisdiction on the Government's prior suit against JPMorgan. The Government sued JPMorgan in New York because that is where JPMorgan is located. Plaintiffs' attempts to distinguish the Government's authority establishing that filing suit does not constitute "transacting business" for purposes of the New York long-arm statute are readily dismissed. The two suits involved "different nuclei of operative facts." *V&A*

---

[3] Cecile de Jongh and Plaskett were not USVI officials, *see* MTD at 14, 15, and thus any New York contacts they may have cannot be the basis for personal jurisdiction over the Government.

[4] Plaintiffs complain that they have only "incomplete" email documentation. But Plaintiffs bear the burden of establishing personal jurisdiction at this stage and their conclusory allegations do not meet that burden. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

*Collection, LLC v. Guzzini Props., Ltd.*, 2021 WL 982461, at *6 (S.D.N.Y. Mar. 15, 2021). This suit does not concern JPMorgan's failure to report suspicious bank transactions.

"A plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Despite this directive, Plaintiffs continue to assert that "conspiracy jurisdiction" is sufficient here. Plaintiffs fail to cite a single non-banking case applying this doctrine. Regardless, conspiracy jurisdiction only applies where Plaintiffs have "plausibly alleged" the existence of a conspiracy. *Bayshore Capital Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 146 (S.D.N.Y. 2023). As explained in prior briefing and below, Plaintiffs have not done so here.

Finally, although Plaintiffs assert that the Court may exercise "pendent jurisdiction" over its claims, pendent jurisdiction is not a substitute for personal jurisdiction. Where the Court lacks personal jurisdiction, "the Court is without a basis to exercise pendent jurisdiction over" the Government. *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 211 (S.D.N.Y. 2018); *Fire & Police Pension Assoc. of Col. v. Bank of Montreal*, 368 F. Supp. 3d 681, 701 (S.D.N.Y. 2019).

**2.      Venue Is Improper In New York**

"[T]he Second Circuit has made clear that the venue analysis 'must focus on where the *defendant's* acts or omissions occurred.'" *Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Labor*, 2015 WL 8492755, at *4 (S.D.N.Y. Dec. 10, 2015) (quoting *Prospect Cap. Corp. v. Bender*, 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009)). Courts "are required to construe the venue statute strictly." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). Even a cursory reading of the Complaint demonstrates that the actions forming the basis of Plaintiffs' allegations against the Government—governmental decisions regarding the application of statutes and governmental functions—all occurred in the Virgin Islands.

**3.        The Government Is Immune and Plaintiffs Fail to State a TVPA or Negligence Claim**[5]

Plaintiffs argue that the TVPA preempts VITCA's notice requirements. Opp'n at 39. The Government does not rely on VITCA to argue the TVPA does not apply. MTD at 16-17. Even if it did, VITCA does not waive immunity for gross negligence, and the TVPA imposes at least a gross negligence standard ("knowingly" and "reckless disregard" standards for perpetrator and conspiracy liability and "knowingly" and "knew or should have known" standards for participation liability), 18 U.S.C. §§ 1595(a), 1591(a)(1) and (a)(2), 1594(c). MTD at 17 n.4. Because the Complaint fails to state a claim under the TVPA, the Court should decline to exercise supplemental jurisdiction over the negligence claim.[6]

Should the Court consider the state law negligence claim, VITCA's notice requirements apply. Opp'n at 40. *Nevada v. Hall*, 440 U.S. 410 (1979), on which *Ashley v. American Airlines, Inc.*, 738 F. Supp. 783, 785-88 (S.D.N.Y. 1990), relies, Opp'n at 40, has been overruled. *See Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 233 (2019) ("the Constitution [does not] permit a State to be sued by a private party without its consent in the courts of a different State … [w]e … overrule our decision to the contrary in *Nevada v. Hall*"). *Ashley* also incorrectly applied the *Nevada* test because the Supreme Court had already recognized that Territories, including the USVI, have sovereign immunity from suits in federal court. *See, e.g., Marx v. Guam*, 866 F.2d 294, 297-98 (9th Cir. 1989) ("[t]he Supreme Court … recognized that territorial governments have a form of common law sovereign immunity" (citing *Kawananakoa v. Polyblank*, 205 U.S. 349, 353

---

[5] The Court should dismiss with prejudice Plaintiffs' withdrawn RICO allegations and claims as to all Defendants. Opp'n at 5 n. 5.

[6] The Complaint alleges subject-matter jurisdiction based on "federal question." SAC ¶ 2. Defendants now wrongly argue the court has diversity jurisdiction over the negligence claim. The USVI, like states, is not a citizen for purposes of diversity. *Brown v. Francis*, 75 F.3d 860, 865-66 (3d Cir. 1996).

4

(1907))). The *Nevada* test applied to jurisdictions where there was not immunity (at the time), *i.e.*, when a State is sued in a sister state court, not federal court. 440 U.S. at 417-20. As explained, New York also does not have significant contacts to satisfy the *Allstate* fairness test.

In any event, Plaintiffs have not shown any "special duty" exception. Opp'n at 71. Plaintiffs' cited case, *Smullen v. City of New York*, 28 N.Y.2d 66, 70 (N.Y. 1971), holds that "there can be no [government] liability for failure to perform a general protective governmental function … or to ascertain a violation"—like the Government's alleged failure to monitor, search, investigate or detain Epstein. MTD at 34. Further, Plaintiffs do not belong to a circumscribed class; the TVPA protects the safety of the general public. Plaintiffs also do not allege the Government had actual knowledge of or participated in Epstein's sex-trafficking venture. If the Government took "positive control" of and "actively worked with Epstein" to further the venture, Opp'n at 72, Plaintiffs have released the negligence claim. MTD at 30 (citing General Release) (releasing all claims against any entity controlled in whole or in part by Epstein (the sex-trafficking venture) and its directors, managers, partners, administrators, agents, and affiliates).

The Government's showing that most of the alleged conduct does not relate to the Government is not "premature." Opp'n at 45. As a matter of law, conduct before and after a government official was in office or outside the scope of office (for example, accepting political contributions, engaging in criminal and unlawful acts, including facilitating sex-trafficking) cannot be attributed to the Government. It was within the scope of employment and authority under Virgin Islands law for certain government officials to take certain actions–for example, Attorney General Frazer's reduction in the travel notice requirements. But to the extent the Complaint alleges Frazer (or others) engaged in otherwise "normal government operations" *as part of the facilitation of*

*Epstein's sex-trafficking operation*, Opp'n at 46, 63, the conduct necessarily falls outside the scope of employment and cannot be attributed to the Government, MTD at 26-27.

Further, Plaintiffs are not entitled to discovery "to prove not a single individual working in the airport or with the coast guard is not a USVI employee." Opp'n at 47. Plaintiffs allege that the customs agents are "federal," SAC ¶ 51, and cite no authority to support that the customs, air traffic, and coast guard agents sued here are not federal employees (and further reference e-mails showing that the customs agents to which they are referring are federal employees, *see* Merson Decl. Ex. S (referring to CBP personnel only)). Plaintiffs concede that Cecile de Jongh "is not an official" and is sued only "in her individual capacity." Opp'n at 81.[7]

The Government is immune from suit under the TVPA. Opp'n at 47. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 688 (1978), Opp'n at 48, is inapposite; the case concerns a *municipal* corporation which, unlike the USVI, does not have sovereign immunity. The TVPA does not "unequivocally" express its intent to abrogate sovereign immunity. *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 61 (2024). "Any ambiguities in the statutory language are to be construed in favor of immunity" and "no amount of legislative history can supply a waiver that is not clearly evident from the language of the statute." *Id.* at 49, 56. Further, § 1591 was not enacted under the Thirteenth Amendment. Opp'n at 47. All Plaintiffs' cited cases refer to § 1589 (forced labor),

---

[7] Cecile de Jongh's cases do not support that as First Lady she was a government official. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 904 (D.C. Cir. 1993) (holding based on federal statute's definition of government official which included "any person authorized by law to perform duties of the office" and Congress explicitly authorized President to delegate duties to spouses). There is no comparable statute in Virgin Islands' law.

6

Opp'n at 49, which is not at issue here,[8] and every case to consider § 1591 finds that it was enacted under Congress' Article I commerce powers. MTD at 17.

Plaintiffs incorrectly argue their TVPA claims are timely "because of its 10-year statute of limitations." Opp'n at 54. Plaintiffs filed suit on November 22, 2023. Thus, the TVPA claims of Jane Doe 4 (2009 and earlier), Jane Doe 5 (same), and Jane Doe 6 (2004), SAC ¶¶ 304-06, are barred. *See Bensky v. Indyke*, No. 1:24-cv-01204-AS, 2024 WL 3676819, at *12 (S.D.N.Y. Aug. 5, 2024) (TVPA claim must allege "some abuse occurred [in the 10-year limitations period]").

There is no dispute that Plaintiffs must plead "an agreement *to participate in the sex-trafficking venture*" under the TVPA conspiracy claim. Opp'n at 56 (citing *Doe I*) (emphasis added). Plaintiffs do not plead any non-conclusory allegations of an agreement between the Government and Epstein to participate in Epstein's sex-trafficking venture. For example, there is no non-conclusory allegation that Governor Mapp, after he took office in January 2015, or Attorney General Frazer between 2007 and 2015 entered into an agreement with Epstein to further Epstein's sex-trafficking operation. Plaintiffs continue to refer to conclusory allegations, for example, "Defendants and Epstein had a meeting of the minds" and Governor de Jongh "entered into an agreement with Epstein to facilitate the sex trafficking venture." Opp'n at 57. Plaintiffs also cannot establish conspiracy because they have failed to allege intentional participation and benefit. MTD at 20-27 and *infra*.

Finally, if Plaintiffs sufficiently alleged that Epstein entered into agreements with government officials to "help Epstein engage in sex trafficking" for "money and assistance," Opp'n at 77, Plaintiffs have explicitly released that claim. The TVPA defines a "venture" as a legal

---

[8] Some courts have held § 1589 was also enacted under Congress' commerce powers. *See Mojsilovic v. Oklahoma*, 841 F.3d 1129, 1134 (10th Cir. 2016). MTD at 17 (note that the Government inadvertently referred to § 1594 at line 13, it should state 1589).

7

or non-legal "entity." 18 U.S.C. § 1591(e)(6). Plaintiffs released all claims against Epstein's sex-trafficking venture (an entity "controlled in whole or part" by Epstein) and their "members," "partners," "beneficiaries," "agents," and/or "affiliates." MTD at 30 (citing General Release). Plaintiffs also released "any entities or individuals who are or have ever been engaged by … Epstein." Plaintiffs agreed the release is "broad" and includes "with limitation" "claims against any and all Releasees as co-conspirators." General Release at 1; *see also Bensky*, 2024 WL 3676819, at *4 (similar release "is about as broad and categorical as it gets").

Plaintiffs have not alleged knowledge, participation, or benefit for purposes of participation liability under § 1591(a)(2).[9] Plaintiffs incorrectly argue that the same alleged conduct of participation also meets the knowledge element. Opp'n at 65 (solicitation regarding sex offender legislation, waiver of sex offender laws, etc.). But none of the alleged conduct sufficiently alleges the separate element that the Government knew or should have known that Epstein used force, fraud, or coercion to cause Plaintiffs—all adult women at all times, SAC ¶ 13, which Plaintiffs do not dispute, Opp'n at 54 ("this suit is brought under the ASA requiring that Plaintiffs be adults at the time of the assaults")—to engage in commercial sex acts in the USVI. MTD at 19-20.

Plaintiffs argue that the Government participated in Epstein's sex-trafficking venture because it failed to satisfy its "obligation to monitor sex offenders, report their whereabouts, as well as suspicious activity" and "duty to report, monitor and investigate Epstein given his [sex offender] status." Opp'n at 62. Plaintiffs fail to cite any legal authority for their argument. There are no allegations that Epstein failed to register as a sex offender in the USVI or provide notification of travel overseas, as the law required. MTD at 20. The decision to reduce the 21-day notice requirement was authorized by law. *Id.* The USVI SORNA law did not require visits to

---

[9] Plaintiffs do not argue perpetrator liability under § 1591(a)(1). MTD at 17-18.

8

Epstein's residence. MTD at 24. In short, Plaintiffs fail to allege any legal obligation or duty that the Government did not meet.

Plaintiffs do not allege that the Government knowingly benefited *from participation in Epstein's sex-trafficking*. USVI law requires EDC beneficiaries to make certain contributions to the territory. The USVI did not solicit or receive a $50 million loan from Epstein and there is no plausible allegation to the contrary. Even if it had, Plaintiffs' own cited document shows that Epstein wanted the loan collateralized by USVI islands, not in return for participation in his sex-trafficking venture. Other private political donations or tuition and other payments to former Governor de Jongh are not benefits or payments to the Government. MTD at 24-26.

Plaintiffs fail to allege that the Government knew of an effort by the federal government to enforce the TVPA for the obstruction claim. Opp'n at 68. Plaintiffs argue that Defendants "attempted to alter language of the SORNA to help [Epstein] avoid tracking and restrictions of a sex offender," Opp'n at 68, which says nothing about the Government's knowledge of an investigation. Plaintiffs also fail to allege the Government intentionally obstructed any federal investigation. In *Doe I*, the Court found that defendants "intentionally failed to file suspicious activity reports [as the law required] in order to frustrate such investigations." MTD at 28. Here, Plaintiffs would have the Court analogize the Government's *lawful* conduct, including issuing a reduction of the 21-day notice requirement for travel overseas (the so-called "waiver" under SORNA). Opp'n at 68. There are no sufficient allegations that the Government did not follow SORNA and/or any other law. MTD at 20-21, 23-24.

Dated: August 26, 2024                    Respectfully submitted,

                                          IAN CLEMENT
                                          DEPUTY ATTORNEY GENERAL

                                          By: */s/ David I. Ackerman*
                                          David I. Ackerman (NYS Bar #4110839)
                                          Motley Rice LLC
                                          401 9th Street NW, Suite 630
                                          Washington, DC 20004
                                          Tel: (202) 849-4962
                                          Email: dackerman@motleyrice.com

                                          Venetia Velázquez, Esq. (*pro hac vice*)
                                          Chief, Civil Division
                                          Virgin Islands Department of Justice
                                          Office of the Attorney General
                                          6151 Estate LaReine
                                          Kingshill, St. Croix
                                          U.S. Virgin Islands 00850
                                          Tel: (340) 773-0295 Ext 20248
                                          Email: venetia.velazquez@doj.vi.gov

                                          *Counsel for Defendant Government of the United States Virgin Islands*