UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1 *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, *et al.*, <br><br> Defendants. | Case Number: 23-cv-10301-AS |

**CECILE DE JONGH'S REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS AND/OR STRIKE</u>**

Amelia J. Schmidt (NYS Bar 4947131)
(admitted *pro hac vice*)
Matt Kaiser (admitted *pro hac vice*)
Courtney Forrest (admitted *pro hac vice*)
Kaiser PLLC
1099 14th Street NW, 8th Floor West
Washington, DC 20005
(202) 640-2850
aschmidt@kaiserlaw.com
mkaiser@kaiserlaw.com
cforrest@kaiserlaw.com

*Counsel for Cecile de Jongh*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | **Plaintiffs' Claims Are Barred by Release**................................................................... | 2 |
| B. | **Plaintiffs Failed to Serve Ms. de Jongh**.................................................................... | 4 |
| C. | **Plaintiffs Claim They're Suing Ms. de Jongh Individually While Arguing She May Have Acted as an Official—They Cannot Have It Both Ways** ..................................... | 6 |
| D. | **There Is No Personal Jurisdiction**............................................................................ | 6 |
| | 1. Ms. de Jongh Did Not "Transact Business" in New York..................................... | 6 |
| | 2. Ms. de Jongh Did Not Commit a Tortious Act in New York................................. | 7 |
| E. | **Venue Is Improper**................................................................................................ | 9 |
| F. | **Plaintiffs' Allegations Fail to State a Claim** ............................................................ | 10 |
| G. | **Plaintiffs' Allegations at Paragraphs 123 and 124 Should Be Stricken** ..................... | 10 |
| **CONCLUSION** ................................................................................................................ | | 10 |

## TABLE OF AUTHORITIES

**Cases**

*218 Operating Corp. v. K/K Enterprises*,
  No. 89 CIV. 4987 (LLS), 1990 WL 115616 (S.D.N.Y. Aug. 8, 1990) ....................................... 9
*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,*
  997 F.2d 898 (D.C. Cir. 1993) ................................................................................................... 6
*Bangladesh Bank v. Rizal Com. Banking Corp.*,
  216 A.D.3d 590 (2023) ............................................................................................................. 8
*Bensky v. Indyke,*
  24-CV-1204 (AS), 2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024) ..................................... 1, 3, 10
*Daou v. BLC Bank, S.A.L.*,
  42 F.4th 120 (2d Cir. 2022) ....................................................................................................... 7
*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023) ....................................................................................... 3
*Gilbert v. Indeed, Inc.*,
  513 F. Supp. 3d 374 (S.D.N.Y. 2021) ....................................................................................... 8
*Hai Yang Liu v. 88 Harborview Realty, LLC*,
  5 F. Supp. 3d 443 (S.D.N.Y. 2014) ........................................................................................... 9
*In re Ethereummax Inv.*,
  No. CV 22-00163-MWF (SKx), 2023 WL 6787827 (C.D. Cal. June 6, 2023) ...................... 10
*L–7 Designs, Inc. v. Old Navy, LLC,*
  No. 09 CIV. 1432, 2010 WL 532160 (S.D.N.Y. Feb. 16, 2010) ................................................ 4
*Nwoye v. Obama*,
  22-CV-1791 (VEC) (RWL), 2023 WL 4631712 (S.D.N.Y. July 20, 2023) ............................... 6
*Reiss v. Steigrod*,
  866 F. Supp. 747 (S.D.N.Y. 1994) ............................................................................................ 8
*Robert G. (Anonymous) v. Newburgh City Sch. Dist.*,
  No. 89 CIV. 2978 (RPP), 1989 WL 97907 (S.D.N.Y. Aug. 16, 1989) ...................................... 4
*Rosenberg v. PK Graphics*,
  No. 03 CIV. 6655 (NRB), 2004 WL 1057621 (S.D.N.Y. May 10, 2004) ................................. 9
*Selman v. Harvard Med. School,*
  494 F. Supp. 603 (S.D.N.Y. 1980) ............................................................................................ 8
*Shanahan v. New York*,
  No. 10 CIV 0742, 2011 WL 223202 (S.D.N.Y. Jan. 24, 2011) ................................................. 9
*United States v. Roman*,
  No. 98-CV-4953 JS ETB, 2008 WL 4415291 (E.D.N.Y. Sept. 22, 2008) ................................ 6

**Statutes**

28 U.S.C. § 1391 ............................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................................... 2
N.Y. C.P.L.R. 302 ...................................................................................................................... 6, 8

N.Y. C.P.L.R. 308 ....................................................................................................................... 4

Case 1:23-cv-10301-AS   Document 160   Filed 08/26/24   Page 4 of 15

Settlements release claims; released claims cannot be brought in a lawsuit. Plaintiffs' claims against Cecile de Jongh have been released; this lawsuit cannot continue as to her. This legal principle is clear, and nothing in Plaintiffs' 83-page opposition provides a reason to sidestep it. All six Plaintiffs executed releases with Jeffrey Epstein's estate including a release of "*all claims or causes of action* arising from Mr. Epstein's conduct" against "any entities or individuals who are or have ever been engaged by . . . employed by . . . or worked *in any capacity* for Jeffrey E. Epstein and/or the Epstein Estate." ECF No. 122-5 at 1 ("the Release") (emphases added). This includes Ms. de Jongh. And, to make things clearer, this Court has already ruled that these releases bar a suit just like this one in *Bensky v. Indyke,* 24-CV-1204 (AS), 2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024), finding that language in a release just like the one in this case barred a plaintiff's claims against individuals who worked for Jeffrey Epstein.

Bereft of any law to support their position, Plaintiffs claim they need more facts, specifically, around whether Ms. de Jongh was employed by Mr. Epstein—even though the Second Amended Complaint itself alleges what Ms. de Jongh has confirmed, that she was employed by Mr. Epstein from 2000 to 2019. ECF No. 112 ("SAC") ¶ 41; Cecile de Jongh Declaration (ECF No. 122-3) ("CDJ Decl.") ¶ 5. This factual question ultimately doesn't matter because, again, the Release covers anyone who worked for Mr. Epstein "*in any capacity*." Release at 1 (emphasis added). But Plaintiffs' remarkable willingness to abandon their own factual pleadings shows just how out of straws they are to grasp on this issue.

Though the Court doesn't need to reach the other issues in Ms. de Jongh's motion to dismiss because the releases are dispositive, Plaintiffs' remaining arguments against dismissal of their claims against her fare no better. There's no legal or factual basis to support a claim that Ms. de Jongh's brother-in-law's apartment is her place of abode under New York law. It's

1

Plaintiffs' burden to prove that she was served. Ms. de Jongh submitted a declaration five months ago rebutting their process server's claim that she authorized service. Plaintiffs contend that Ms. de Jongh has only raised a "question of fact" on this issue. ECF No. 148-1 ("Opp.") at 38. But Plaintiffs have offered no facts supporting their bald assertion that she was personally served. There's no reason to believe time spent in discovery would yield any relevant additional facts. Plaintiffs likewise offer only speculation that discovery "may" uncover relevant facts on the other grounds for dismissal, including personal jurisdiction, venue, and immunity. Plaintiffs need more than speculation, which isn't sufficient to survive a motion to dismiss.

For these reasons—and all those stated in the other defendants' Motions and replies in support thereof in which Ms. de Jongh also joins—Plaintiffs' claims against her must be dismissed.[1]

A. **Plaintiffs' Claims Are Barred by Release**

Again, Plaintiffs all executed broad releases with Epstein's estate that included release of "all claims or causes of action arising from Mr. Epstein's conduct" against "any entities or individuals who are or have ever been . . . employed by . . . or worked *in any capacity* for Jeffrey E. Epstein and/or the Epstein Estate." Release at 1 (emphasis added). Rule 12(b)(6) and courts in this District make clear that claims that are barred by release should be dismissed. *See* ECF No. 122-1 at 10-11. Plaintiffs' arguments that their releases don't bar their claims against Ms. de Jongh (Opp. at 76-81) are unavailing—and this Court has confirmed this much. Just three weeks ago, this Court held that a virtually identical release between another of Mr. Epstein's alleged victims and Mr. Epstein's estate barred that alleged victim's claims.

---

[1] Plaintiffs also claim that the defendants' motions sandbag them. Opp. at 5-8. The same arguments apply to the SAC as applied to the prior one; making the same arguments should be expected. Ms. de Jongh joins in the other defendants' arguments on this issue.

In *Bensky*, one of the plaintiffs had executed a release that, exactly like the Release here, included "any and all claims or causes of action that arise . . . from . . .acts of sexual abuse by Mr. Epstein," and released "any entities or individuals who are or have ever . . . worked *in any capacity* for" Mr. Epstein. 24-CV-1204, 2024 WL 3676819, at *4, *5. The Court found that that release barred claims against Mr. Epstein's lawyer and accountant, and rejected all of plaintiff's arguments to the contrary, holding that:

- The claims were "squarely covered by the release";

- While Judge Rakoff had found, in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023), that a similar release did not bar claims against JP Morgan or Deutsche Bank, Judge Rakoff's holding "relied on specific carve-out language applicable to financial institutions," and therefore, it did not apply to releases of individuals who worked for Mr. Epstein;

- The release validly included claims unknown at the time of release, including any claims that may have been revived later under the New York Adult Survivors Act and amendments to the Victim Protection Law; and

- There was valid consideration for the release.

*Id*. Plaintiff's Opposition repeats these rejected arguments, stating they wish to preserve them for appeal. Opp at 79, n.40. But *Bensky* and the law it relies on make clear that these arguments fail.

Plaintiffs contend that discovery is warranted because the release would not cover "claims against her when she was acting as the First Lady and after she left Epstein's employ." Opp. at 78. Plaintiffs also argue that "there is no incontrovertible evidence that Epstein owned or controlled either Financial Trust Company or Southern Trust Company, just Defendants' say-so," and therefore "[d]iscovery is needed to determine if de Jongh was employed by an Epstein entity as defined by the release." Opp. at 77.

Like the release in *Bensky*, it's clear that the Release covers claims against releasees in any capacity, so discovery is not warranted on this issue. But this argument as applied to Ms. de

3

Jongh is particularly confounding, since the facts on which Plaintiffs claim discovery is warranted aren't "Defendants' say-so"; they're allegations in Plaintiffs' own pleadings. The SAC alleges that Ms. de Jongh "worked for Financial Trust Company and/or Southern Trust Company from 2000 to 2019, entities in which Jeffery [sic] Epstein conducted business." SAC ¶ 41. Nothing in the SAC alleges anything occurring outside that nineteen-year timeframe. *See id.* Moreover, the public record of Mr. Epstein's ownership and control of these entities is clear. *See, e.g.,* Goldstein & Eder, *Jeffrey Epstein Raked in $200 Million After Legal and Financial Crises*, N.Y. Times (Nov. 26, 2019), *available at* https://www.nytimes.com/2019/10/03/business/jeffrey-epstein-southern-trust.html. To argue that discovery may be needed on whether Financial Trust Company or Southern Trust Company employees like Ms. de Jongh may be included in the release is frivolous. *See L–7 Designs, Inc. v. Old Navy, LLC,* No. 09 CIV. 1432, 2010 WL 532160, at *2 (S.D.N.Y. Feb. 16, 2010) (plaintiff must have "good faith basis for its claims before it file[s] its pleadings"); *Robert G. (Anonymous) v. Newburgh City Sch. Dist.*, No. 89 CIV. 2978 (RPP), 1989 WL 97907, at *1 (S.D.N.Y. Aug. 16, 1989) ("Rule 11 requires attorneys to conduct a pre-filing inquiry into the facts that they allege in a complaint.").

Plaintiffs' unjustifiable attempt to dodge their own releases must be put to an end and their claims against Ms. de Jongh dismissed.

**B.     Plaintiffs Failed to Serve Ms. de Jongh**

Plaintiffs contend that service was proper because Ms. de Jongh's brother-in-law's address was a "place of abode" under the statute. Opp. at 38, citing N.Y. C.P.L.R. 308(4). In support of that argument, they rely on:

> (1)     An affidavit from Sue Cortina (ECF No. 148-8) ("Cortina Affidavit"), whose company Plaintiffs' counsel apparently engaged to trace and attempt to serve Ms. de Jongh. *See* Cortina Aff. ¶ 5. Ms. Cortina states that her searches on Ms. de Jongh (which she doesn't include in her affidavit) indicated that Ms. de Jongh

4

       provided her brother-in-law's address "to credit reporting agencies . . . and other similar agencies that require your date of birth and social security number" (it is unclear whether or what extent these entities require a legal residence, which is the only relevant question here) (Cortina Aff. ¶ 5)[2]; and

(2)    Several New York cases for the proposition that "the usual place of abode need not be a primary residence." Opp. at 38. While this may be the case, none of these cases go so far as to hold that a relative's home whose address one may have occasionally reported to "credit reporting agencies, utility companies, and other similar agencies that require your date of birth and social security number" makes that address a "usual place of abode." *See* Opp. at 38 (discussing cases).

      Plaintiffs, bizarrely, also argue that service was proper because Ms. de Jongh "does not assert that she has never stayed at that apartment for a reasonable period of time, or called it home for months." Opp. at 38. If Plaintiffs have reason to believe Ms. de Jongh resided at her brother-in-law's apartment for "a reasonable period of time" (a term untethered to anything in the statute or in the cases they cite) or that she "called it home for months" (same), then it is Plaintiffs' burden to proffer evidence of that much. Plaintiffs instead speculate that Ms. de Jongh "may have more frequently traveled to New York" because her child attended Skidmore College (which, while in New York state, is nearly 200 miles from Ms. de Jongh's brother's residence). Opp. at 38. Travel to, even staying at, a relative's home while visiting a child at college does not make the relative's home a place of abode under New York law; that would be absurd.

      Plaintiffs further contend that Ms. de Jongh has raised a question of fact about whether she authorized service, even if the residence was not her place of abode. Opp. at 38. But in the interim five months, Plaintiffs have not sought or gathered any evidence to substantiate their own process server's assertion that Ms. de Jongh's relative's doorman said he was authorized to

---

[2] Plaintiffs further argue that Ms. de Jongh "has held out this address as her New York residence . . . [f]or decades." Opp. at 39. But nothing in Ms. Cortina's affidavit supports that; Ms. Cortina's affidavit states (again, without offering her actual results) that Ms. de Jongh allegedly gave this address to vaguely-described "agencies" during a three-year- period between January 2020 and October 2023. Cortina Aff. ¶ 5.

5

accept service. It is their burden to show that she was served, not Ms. de Jongh's. *See United States v. Roman*, No. 98-CV-4953 JS ETB, 2008 WL 4415291, at *1 (E.D.N.Y. Sept. 22, 2008).

Plaintiffs failed to serve Ms. de Jongh as New York law requires; the Complaint should be dismissed for this reason as well.

**C.    Plaintiffs Claim They're Suing Ms. de Jongh Individually While Arguing She May Have Acted as an Official—They Cannot Have It Both Ways**

Plaintiffs continue to speak from both sides of their mouths on the immunity issue. In the same section in which Plaintiffs write that Ms. de Jongh is "not an official," and they're suing her as an individual, they argue for discovery "to determine whether . . . [Ms. de Jongh] was acting as Epstein's employee or as the First Lady." Opp. at 81-82. If Plaintiffs are, in fact, only suing Ms. de Jongh in her individual capacity, then discovery is irrelevant on the immunity issue.

And to the extent Plaintiffs are suing her in an official capacity, nothing in their opposition supports an argument that she isn't immune. They claim that the two cases in Ms. de Jongh's motion "contradict her position or are irrelevant," but they don't explain any basis for this assertion. Opp. at 81. While the court in *Nwoye v. Obama* found it unnecessary to reach the issue, it strongly suggested agreement with the D.C. Circuit that a First Lady is immune. 22-CV-1791 (VEC) (RWL), 2023 WL 4631712, at *8 (S.D.N.Y. July 20, 2023) (citing *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,* 997 F.2d 898, 904 (D.C. Cir. 1993)). Again, then, to the extent that Plaintiffs allege that Ms. de Jongh acted as a government official, she is immune from suit.

**D.    There Is No Personal Jurisdiction**

**1.    Ms. de Jongh Did Not "Transact Business" in New York**

Plaintiffs' opposition merely repeats their allegations in the SAC that personal jurisdiction exists over Ms. de Jongh (and the other defendants) under Section 302(a)(1) because

6

of (1) her and the other defendants' receipt of payments from Mr. Epstein through New York bank accounts; and (2) her own communications with Mr. Epstein while she worked for him. *See* Opp. at 23-25. As to the first, Ms. de Jongh joins in the other defendants' arguments as to why receipt of funds via a New York account doesn't constitute transaction of business in New York.³

As to the second, the Opposition makes vague reference to Ms. de Jongh's "regularly communicat[ing] with Epstein in New York," Opp. at 30, but this is misleading. The SAC does not allege that Ms. de Jongh was in New York for any of her alleged communications with Mr. Epstein, nor does it allege that Mr. Epstein was in New York when the communications occurred. *See* SAC ¶ 5. And none of the cases they cite support that a nonresident transacts business in New York simply by working outside New York for an individual who from time to time paid her or individuals she knows through a New York bank account.

Moreover, to establish payments through New York bank accounts as a basis for personal jurisdiction under this provision of the long-arm statute, Plaintiffs must allege "an actual, specific transaction" through a specific account "in the course of bringing about the injuries on which the claims are predicated." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 132 (2d Cir. 2022). Plaintiffs didn't do that. They cannot then rely on the bank accounts as a basis for personal jurisdiction.

2.   **Ms. De Jongh Did Not Commit a Tortious Act in New York**

Plaintiffs argue that Ms. de Jongh "commit[ted] a tortious act within" New York, apparently based on a theory that she performed "work . . . in furtherance of the sex trafficking enterprise" during her brief stay in New York in 2017. Opp. at 25-26. Plaintiffs appear to base

---

³ The cases Plaintiffs cite in a particular section as to Ms. de Jongh and bank transfers also involve either banks or bankers that opened and/or effected transfers to a New York account. *See* Opp. at 24-25. As explained in Ms. Plaskett's motion to dismiss, in which Ms. de Jongh joined, courts have recognized that's different from an individual who receives money that happens to be from a New York account. *See* ECF No. 118 at 6-8.

7

this in part on a conspiracy theory of personal jurisdiction that it applies to the other defendants. *Id.* at 26-29. Ms. de Jongh also joins in the other defendants' arguments as to why personal jurisdiction does not exist on this basis.[4]

Plaintiffs' other basis for this theory appears to be that Ms. de Jongh stayed in New York while recuperating from surgery, even though she's provided documents confirming that any work she performed during those stays was minimal and administrative. Opp. at 25-26; CDJ Decl. ¶¶ 17-20. Plaintiffs do not refute this; they argue that discovery is warranted because it "*may* show that [CDJ] made multiple trips to New York and stayed for extended periods," and/or to verify "whether the work was indeed occasional" during the two brief periods she was in New York for medical reasons. Opp. at 26, 30 (emphasis added).

This is not permissible. Plaintiffs pled two fleeting visits to New York, which are not legally sufficient for personal jurisdiction in any case. Courts in this District have consistently held that that is not sufficient under the long-arm statute, *Reiss v. Steigrod*, 866 F. Supp. 747, 750 (S.D.N.Y. 1994) (Sotomayor, J.), nor indeed under the Due Process Clause. *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 415 (S.D.N.Y. 2021); *Selman v. Harvard Med. School,* 494 F. Supp. 603, 614 (S.D.N.Y. 1980).

Ms. de Jongh, for her part, provided a sworn declaration and evidence making even clearer that those trips were in no way connected with her work for Mr. Epstein. Yet Plaintiffs—after multiple opportunities to amend their complaint, and five months after receiving this

---

[4] Plaintiffs cite what undersigned counsel understands to be *Bangladesh Bank v. Rizal Com. Banking Corp.*, 216 A.D.3d 590, 591 (2023) (undersigned counsel couldn't locate the reporter cite provided in the Opposition), in support of their argument that personal jurisdiction exists over Ms. de Jongh in particular, under N.Y. C.P.L.R. 302(a)(2). Opp. at 26. But the Appellate Division affirmed a lower court's finding of *no* personal jurisdiction on a conspiracy basis. *Bangladesh Bank*, 216 A.D.3d at 591. It has zero relevance to this case.

8

declaration from Ms. de Jongh—have responded with no additional facts or evidence to substantiate a belief that Ms. de Jongh committed any tortious act while she was recovering from surgery in New York. They've offered only "speculations or hopes . . . that further connections to New York will come to light in discovery," which is not sufficient. *Rosenberg v. PK Graphics*, No. 03 CIV. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004); *see also Shanahan v. New York*, No. 10 CIV 0742, 2011 WL 223202, at *10 (S.D.N.Y. Jan. 24, 2011) ("[A] plaintiff may not save an insufficient pleading by making conclusory or speculative allegations and then asserting the need for discovery to see if those allegations are true.")

"Federal jurisdiction cannot be based on surmise or guesswork." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 449 (S.D.N.Y. 2014) (quotation omitted). "It cannot simply be assumed, as [Plaintiffs] wish[], with discovery then permitted in hopes that a proper basis for jurisdiction can later be ascertained." *Id.* (citation and quotation omitted). That is exactly what Plaintiffs are seeking at this point, and the Court should not permit it.

### E.     Venue Is Improper

Venue is also improper, for reasons similar to those dooming Plaintiffs' personal jurisdiction arguments. Again, Plaintiffs have not alleged facts supporting that any of the communications in the SAC took place when either Ms. de Jongh or Mr. Epstein was in New York. Nothing in the SAC alleges a "substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391; *see also 218 Operating Corp. v. K/K Enterprises*, No. 89 CIV. 4987 (LLS), 1990 WL 115616, at *3 (S.D.N.Y. Aug. 8, 1990). Ms. de Jongh further adopts and incorporates by reference the arguments made by the other defendants as to venue.

9

### F.  Plaintiffs' Allegations Fail to State a Claim

While claims against Ms. de Jongh have been released as discussed in Section A *supra*, the allegations in the SAC also fail to state a valid claim. Nothing in Plaintiffs' Opposition is to the contrary. They've withdrawn their Racketeer Influence and Corrupt Organizations Act ("RICO") claims and none of their arguments as to the Trafficking Victims Protection Act ("TVPA") are availing. Ms. de Jongh joins in the other defendants' submissions on this issue.

### G.  Plaintiffs' Allegations at Paragraphs 123 and 124 Should Be Stricken

Plaintiffs argue that the allegations about Ms. de Jongh in paragraphs 123 and 124 should not be stricken because they are relevant to her "knowledge of the sex trafficking venture." Opp. at 83. *Ms. de Jongh had no such knowledge.* Regardless, none of the counts in the SAC—including ones that specifically require knowledge as an element—reference these allegations. These allegations appear "included solely to demonstrate [Ms. de Jongh's] willingness to violate applicable laws," which is not permissible. *In re Ethereummax Inv.,* No. CV 22-00163-MWF (SKx), 2023 WL 6787827, at *43 (C.D. Cal. June 6, 2023) (quotation omitted).[5]

### CONCLUSION

For the foregoing reasons, Cecile de Jongh respectfully requests that the claims against her be dismissed and Plaintiffs' allegations in paragraphs 123 and 124 be stricken.

---

[5] Plaintiffs cite *Bensky* to support a denial of a motion to strike, Opp. at 83, but that involved a motion to strike class action allegations, which applies a different (and higher) standard. *See Bensky*, 2024 WL 3676819, at *2.

| | |
|---|---|
| Dated: August 26, 2024 | __/s/_____<br>Amelia J. Schmidt (NYS Bar 4947131) (admitted *pro hac vice*)<br>Matt Kaiser (admitted *pro hac vice*)<br>Courtney R. Forrest (admitted *pro hac vice*)<br>Kaiser PLLC<br>1099 14th Street NW, 8th Floor West<br>Washington, DC 20005<br>(202) 640-2850<br>aschmidt@kaiserlaw.com<br>mkaiser@kaiserlaw.com<br>cforrest@kaiserlaw.com<br><br>*Counsel for Cecile de Jongh* |