UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually, and on behalf of all others similarly situated, JANE DOE 2, individually, and on behalf of all others similarly situated, JANE DOE 3, individually, and on behalf of all others similarly situated, JANE DOE 4, individually, and on behalf of all others similarly situated, JANE DOE 5, individually, and on behalf of all others similarly situated, and JANE DOE 6, individually, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS, FIRST LADY CECILE DE JONGH, GOVERNOR KENNETH MAPP, SENATOR CELESTINO WHITE, ATTORNEY GENERAL VINCENT FRAZER, GOVERNOR JOHN DE JONGH, SENATOR CARLTON DOWE, DELEGATE STACEY CONGRESSWOMAN PLASKETT, and JOHN DOES 1-100,<br><br>     Defendants. | CIVIL ACTION NO.<br>1:23-cv-10301-AS |

**DEFENDANT CONGRESSWOMAN STACEY PLASKETT'S REPLY IN FURTHER SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' INDIVIDUAL AND CLASS ACTION SECOND AMENDED COMPLAINT**

DUANE MORRIS, LLP
Eric R. Breslin
Melissa S. Geller
1540 Broadway
New York, New York 10036-4086
212-692-1000
erbreslin@duanemorris.com
msgeller@duanemorris.com
*Attorneys for Defendant Stacey Plaskett*

1

**Table of Contents**

| | | |
|---|---|---:|
| I. | Procedural issues in Plaintiffs' Opposition. | 1 |
| II. | Plaintiffs Fail to Establish that the Court has Personal Jurisdiction. | 1 |
| III. | Counts One through Three: Claims pre-dating 2013 should be dismissed as either pre-dating the TVPA or because they fall outside the statute of limitations. | 4 |
| IV. | Plaintiffs Fail to Identify any Non-Conclusory Allegations Giving Rise to a Plausible Claim for Relief for any Counts. | 5 |
| V. | Count Three: Plaintiffs Fail to Plead Obstruction of the TVPA. | 7 |
| VI. | Plaintiffs Fail to Allege a Cause of Action for Negligence. | 8 |
| VII. | The Court Should Issue an Order Dismissing Plaintiffs RICO Claims with Prejudice. | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Amigo Foods Corp. v. Marine Midland Bank*, 61 A.D.2d 896 (1st Dep't 1978) ............................1

*Bailon v. Pollen Presents*, No. 22 CIV. 6054 (KPF), 2023 WL 5956141 (S.D.N.Y. Sept. 13, 2023) ....................................................................................................................3

*Bangladesh Bank v. Rizal Com. Banking Corp.*, 226 A.D.3d 60 (1st Dep't 2024) ..................... 2-3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................5

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) ................................................2

*Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*, No. 23 CIV. 3454 (LGS), 2024 WL 989841 (S.D.N.Y. Mar. 7, 2024) ....................................................................................3

*Chapin Home for the Aging v. McKimm*, No. 11-cv-0667(FB)(REF), 2014 WL 12883697 (E.D.N.Y. Aug. 7, 2014) .............................................................................................2

*Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............. 7, 9-10

*Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014) ..................................... 4-5

*Ferreira v. City of Binghamton*, 38 N.Y.3d 298 (2022) ................................................................9

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011) ............................................................................5

*Gonzalez v. Caballero*, 572 F. Supp. 2d 463 (S.D.N.Y. 2008) .....................................................8

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015) ..........................................................................4

*Pasternack v. Lab'y Corp. of Am.*, 892 F. Supp. 2d 540 (S.D.N.Y. 2012) ....................................9

*Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ............................................................................................................5

*R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509 (2d Cir. 2020) ..............................................................................................................................8

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) ............................................................4

*Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 CIV. 1188 (GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009) .....................................................................................2

*Stephanie L. v. House of the Good Shepherd*, 186 A.D.3d 1009 (4th Dep't 2020) .........................9

**Statutes and Rules**

CPLR 302(a)(1) ...................................................................................................................1

FRCP 41 ............................................................................................................................10

**Other Authorities**

Dep't of Justice, Office of Professional Responsibility, *Investigation into the U.S. Attorneys' Office for the Southern District of Florida's Resolution of Its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation*, Nov. 2020 ......................................................................7

Suzanne Carlson, "V.I. Delegate, other high-ranking V.I. officials tied to registered sex offender," Virgin Island Daily News, Feb. 19, 2020 ..........................................8

Virgin Islands Visa Waiver Act of 2015, H.R. 2116, 14th Cong. (2015-2016) ...............................6

Defendant Stacey Plaskett submits this memorandum of law in further support of her motion to dismiss the SAC. All defined terms are accorded the meaning assigned in Congresswoman Plaskett's Motion to Dismiss unless otherwise indicated. As set forth below, this motion should be granted in its entirety.

**I.     Procedural issues in Plaintiffs' Opposition.**

Plaintiffs refer to or cite to material outside the four corners of the pleading. (*See, e.g.,* Opp., p. 3 n.4, p. 12; Ex. L). This is improper for any aspect of the motions other than the jurisdictional motions. Congresswoman Plaskett objects to Plaintiffs' reliance on information outside the four corners of the pleading concerning anything other than jurisdiction. Congresswoman Plaskett also objects to the extent Plaintiffs seek to rely on their opposition to the motions to dismiss directed to the First Amended Complaint. (*See* Op., p. 7). Those motions were terminated upon amendment of the First Amended Complaint. (ECF No. 98).

Congresswoman Plaskett further notes that Plaintiffs employ what can only charitably called a "creative" interpretation of facts and citations. There is insufficient space in this reply to address all of Plaintiffs' questionable citations and inferences. Congresswoman Plaskett would simply urge the Court to take none of Plaintiffs' citations or analyses at face value.

**II.    Plaintiffs Fail to Establish that the Court has Personal Jurisdiction.**

No jurisdiction arises under CPLR 302(a)(1) because Plaintiffs point to no allegation, attach no evidence, and identify no basis supporting even an inference that Plaskett had the ability or the inclination to direct how Epstein chose to make campaign donations. Assuming Plaintiffs adequately pleaded any payment from a New York account, Congresswoman Plaskett's campaign was a passive recipient of funds and the Court cannot exercise jurisdiction. *Amigo Foods Corp. v. Marine Midland Bank*, 61 A.D.2d 896, 896 (1st Dep't 1978) (holding no jurisdiction because the defendant had passively and unilaterally been made the recipient of

funds); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403 (S.D.N.Y. 2021) (holding no jurisdiction because of use of correspondent account absent evidence the defendant directed or controlled the route of the funds); *Chapin Home for the Aging v. McKimm*, No. 11-cv-0667(FB)(REF), 2014 WL 12883697, at *5 (E.D.N.Y. Aug. 7, 2014) ("The passive receipt of allegedly stolen funds absent evidence of knowledge or intent, is an inadequate basis for the court's exercise of personal jurisdiction" (quotation omitted)).

Congresswoman Plaskett's limited fundraising also does not amount to transacting business. Plaintiffs misunderstand *Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 CIV. 1188 (GEL), 2009 WL 1490852, at *7 (S.D.N.Y. May 27, 2009). *Sills* stands for the proposition that consistent, long-term, and targeted solicitation of donations directed to one resident in New York established a "significant business relationship" in New York. *See id.* at *6-8. That is not the case here. The limited fundraising alleged (one visit, two general events) does not evidence a "substantial business relationship." As the court in *Sills* observed, a party does not necessarily transact business in New York every time they seek a contribution. *Id.* at *8.

Plaintiffs' claim that Congresswoman Plaskett visited New York three times to solicit contributions from Epstein is not supported by the citations to the SAC or any document attached to the Opposition. (Opp., p. 17). To the contrary, Exhibit E, p. 2 shows Congresswoman Plaskett came to New York for a campaign event not a trip to court Epstein. (Ex. E).

Plaintiffs also cannot establish jurisdiction on a conspiracy theory. To establish jurisdiction based on a conspiracy theory, Plaintiffs must first allege that the defendant joined a conspiracy and that an overt act occurred in New York. *Bangladesh Bank v. Rizal Com. Banking Corp.*, 226 A.D.3d 60, 75-76 (1st Dep't 2024). Plaintiffs do not state a *prima facie* case for conspiracy.

Plaintiffs also must allege: (a) the defendant was aware their action had effects in New York, (b) the New York activity benefited the out-of-state coconspirators, and (c) the New York co-conspirators acted at the direction, control, request, or on behalf of the out-of-state defendant. *Id.* at 76. Plaintiffs fail to allege all three:

**(a)** The SAC alleges nothing to suggest that Plaskett "must have known or should have anticipated overt acts in New York to advance the conspiracy." *Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*, No. 23 CIV. 3454 (LGS), 2024 WL 989841, at *9 (S.D.N.Y. Mar. 7, 2024). Plaintiffs allege only that Plaskett knew Epstein lived in the USVI. The Court should reject the invitation to translate knowledge of Epstein's residence to knowledge of overt acts in New York. *Bailon v. Pollen Presents*, No. 22 CIV. 6054 (KPF), 2023 WL 5956141, at *7 (S.D.N.Y. Sept. 13, 2023) ("Absent specifics, the Court "cannot invent factual allegations that [Plaintiff] has not pled." (quoting *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

**(b)** The SAC contains no allegations that Epstein's alleged actions in New York benefitted Plaskett. Any use of a New York bank account was to his benefit and convenience. No allegation gives rise to any suggestion that Congresswoman Plaskett had any reason to care through which bank Epstein elected to make donations.

**(c)** "Conspiracy jurisdiction cannot "be established without showing some extent of control over the in-state actor." *Bangladesh*, 226 A.D.3d at 79. To show control, a Plaintiff must plead detail sufficient to show that the "defendant was a primary actor in the specific matter in question." *Id.* at 77. "Control cannot be shown upon conclusory allegations." *Id.* The SAC contains no allegations permitting an inference of such control.

The exercise of personal jurisdiction would also offend principles of due process. Plaintiffs fail to identify the sufficient minimum contacts with the State of New York that would

3

support the exercise of jurisdiction. Plaintiffs allege no facts suggesting that Congresswoman Plaskett "directed and requested payments from Epstein's accounts in New York" or that she "participat[ed], coordinat[ed], and cooperat[ed] in Epstein's sex trafficking enterprise. (Opp., p. 30). Nor have Plaintiffs alleged any facts suggesting Epstein "saw 'a return'" from Congresswoman Plaskett "which propelled the enterprise." (*Id.*). Plaintiffs cannot satisfy their pleading burden through the use of bloviated, but ultimately empty language.

### III.   Counts One through Three: Claims pre-dating 2013 should be dismissed as either pre-dating the TVPA or because they fall outside the statute of limitations.

Plaintiffs conflate the retroactivity issue and the statute of limitations issue. These are two different issues. Claims before December 19, 2003, including class claims, pre-date the effective date of the TVPA; there is no cause of action prior to that date. Tolling principles do not apply. The Doe 1 and class claims that predate December 19, 2003 should be dismissed.

The ten-year statute of limitations bars claims accruing before November 22, 2013. The "continuous violation" doctrine is not relevant here because it applies only where a "continuous series of events giv[es] rise to a cumulative injury." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (quoting *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2009). It does not apply to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). The doctrine is most often seen in cases where the cause of action requires a showing of continuous and pervasive conduct, such as workplace discrimination cases. *Id.* at 802 F.3d at 220.

Equitable estoppel not apply because Plaintiffs fail to allege that any defendant made a "definite misrepresentation of fact" to any Plaintiff which caused the Plaintiff to delay filing a known claim. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (finding equitable estoppel does not apply in the absence of a misrepresentation). Plaintiffs seem

4

to confuse equitable estoppel with equitable tolling. Plaintiffs fail to plead the fraudulent concealment necessary to invoke equitable tolling. *Id.*, 774 F.3d at 801 (stating the elements of equitable tolling).

### IV. Plaintiffs Fail to Identify any Non-Conclusory Allegations Giving Rise to a Plausible Claim for Relief for any Counts.

Plaintiffs point to no factual allegations supporting the conclusory claims in the SAC. The Opposition just repeats them as if repetition will by magic create substance. The use of group pleading exacerbates the problem. Plaintiffs acknowledge the use of group pleading, but argue it is permissible because the defendants all "committed the same tort." (Opp., pp. 52-53). This is not the rule. A complaint must provide a defendant with sufficient *factual* basis for defendants to distinguish their conduct from other defendants. *Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023). "Unless a defendant knows what they are alleged to have done, they are shadow-boxing." *Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *6 (S.D.N.Y. Mar. 8, 2023).

Basic pleading standards apply to claims of conspiracy as well, Plaintiffs' suggestion otherwise notwithstanding. (Opp., p. 56). "[C]laims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy . . .cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). A complaint for conspiracy that "offers not a single fact to corroborate [an] allegation of a 'meeting of the minds' among conspirators" fails the pleading standard. *Id.*

The SAC has even less indicia of conspiracy than the one rejected by the Supreme Court in *Twombly*, which at least contained allegations of parallel conduct by competitors. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 544 (2007). Here, Plaintiffs fail to allege any conduct indicative of conspiracy. Even if Plaintiffs did successfully allege that Congresswoman Plaskett

5

had some kind of input in tax incentive decisions, it still does not give rise to an inference of conspiracy. Plaintiffs offer no non-conclusory, concrete allegation that Epstein provided Congresswoman Plaskett any benefit while she was at the VIEDA. After she left the VIEDA, Plaintiffs proffer no credible allegation that Congresswoman Plaskett ever took any action that remotely benefitted Epstein aside from vague claims that she exercised "influence" on unidentified people aimed at accomplishing unidentified nefarious deeds at unidentified times.

Plaintiffs attempt to cover for the lack of specifics with new claims, based on questionable citations. For example, in the Opposition, Plaintiffs claim that Congresswoman Plaskett assisted Epstein by introducing legislation in the United States Congress that "advanced the enterprise." (Opp., p. 46). This borders on misrepresentation. The Virgin Islands Visa Waiver Act of 2015 was a bill that would waive visa requirements for nationals of countries in the Caribbean Community entering the USVI for short-term stays. Virgin Islands Visa Waiver Act of 2015, H.R. 2116, 114th Cong. (2015-2016).[1] It never made it out of committee. *See id*. It had no relevance to Epstein or Epstein's sex trafficking and never passed. On a related line, Plaintiffs attempt to argue (without citation) that United States citizens need passports to enter the mainland United States from the USVI. (Opp., p. 3). They do not according to the United States Government. USA.gov, "Do you need a passport to travel to or from U.S. territories or Freely Associated States?" (last visited Aug. 24, 2024).

Plaintiffs fail to identify non-conclusory statements that support any cause of action. The SAC should be dismissed.

---

[1] Information on the bill, its text, and its status can be found at Congress.gov, https://www.congress.gov/bill/114th-congress/house-bill/2116

6

## V. Count Three: Plaintiffs Fail to Plead Obstruction of the TVPA.

To state a claim for obstruction, Plaintiffs must plead that Congresswoman Plaskett had knowledge of an investigation for violation of the TVPA, and that she took steps to obstruct it. *Doe 1 v. Deutche Bank Aktiengelsellschaft*, 671 F. Supp. 3d 387, 409 (S.D.N.Y. 2023). The court in *Doe 1* relied on specific factual allegations, including internal bank communications, showing the defendant banks knew of investigations into Epstein and took action specifically to frustrate the investigations. *Id.* at 409.

Plaintiffs attempt to identify an unpleaded, amorphous, decade-long investigation by misrepresenting a report by the Department of Justice. (*See* Opp., p. 68) (claiming that a DOJ investigation began before Epstein's 2019 conviction and "continued through that time"). In 2020, the Department of Justice released a report on the government's failure to prosecute Epstein in 2007 on federal charges of sex trafficking and the subsequent *lack* of investigation. *See* Dep't of Justice, Office of Professional Responsibility, *Investigation into the U.S. Attorneys' Office for the Southern District of Florida's Resolution of Its 2006-2008 Federal Criminal Investigation of Jeffrey Epstein and Its Interactions with Victims during the Investigation*, Nov. 2020.[2] The report identifies just one investigation that appears to have concluded in May 2007, when the AUSA in charge of the investigation submitted a draft indictment and charging memorandum. *Id.* at p. i. The report does not identify a decade-long investigation into Epstein.

Clearly, the United States Attorney for the Southern District of New York conducted some kind of investigation in or around 2018 or 2019. But, Plaintiffs plead no specifics about

---

[2] Available at available at https://www.justice.gov/opa/press-release/file/1336416/dl.

7

that investigation and no facts suggesting Congresswoman Plaskett knew of it, had reason to know of it, or took any action to frustrate it.

Plaintiffs also plead no obstructive conduct. Plaintiffs argue that Congresswoman Plaskett obstructed the TVPA by "influencing others" to approve EDC tax breaks "when a Senator [*sic*] insisted" Epstein's sex offender status disqualified him for tax incentives. (Opp., at p. 69-70). This is just a conclusory claim lacking any factual support. Nor do Plaintiffs explain how such conduct, even if it were well-pleaded, obstructed any known investigation.

It is also worth noting that the claim itself is seriously flawed. The cited article, published in 2020, includes a *current* quote from Senator Janelle Sarauw stating that Epstein should have been more fully vetted, and denied tax incentives because of his prior conviction. Suzanne Carlson, "V.I. Delegate, other high-ranking V.I. officials tied to registered sex offender," Virgin Island Daily News, Feb. 19, 2020. The article does not identify a contemporaneous objection to Epstein's application for tax incentives. Further, Plaintiffs state repeatedly that Epstein's prior conviction *per se* disqualified him from receiving tax breaks. (*See* Opp., p. 3). Plaintiffs never identify a statute, regulation, rule, or policy statement supporting this claim. Plaintiffs have no basis to say approving Epstein for tax breaks violated the law.

## VI. Plaintiffs Fail to Allege a Cause of Action for Negligence.

First, Plaintiff fails to identify any legally recognized duty owed by Plaskett to any Plaintiff. Without the existence of a specific legal duty running directly to the injured person, there can be no negligence claim "however careless the conduct or foreseeable harm." *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020). In New York, a plaintiff most show a special relationship between the plaintiff and the defendant giving rise to an obligation "to exercise reasonable care to prevent foreseeable harm to the plaintiff." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008). This requires a

showing of "more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff." *Pasternack v. Lab'y Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012). Plaintiffs identified no legally recognized duty running from Congresswoman Plaskett to any Plaintiff.

Second, Plaintiffs misapply the "special duty" rule. The "special duty" rule, also known as the "public duty" rule, does not expand or create duties for public actors. Rather, the rule is an exception to the broad immunity afforded government actors acting in their governmental capacity. *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 304 (2022). It is an additional element for a negligence claim leveled against a party based on the exercise of a government function. *Id.* at 308. A plaintiff has to plead the existence of a legally recognized duty and also plead application of the "special duty" rule. *Id.* Plaintiffs cannot use the "special duty" rule to manufacture duties not otherwise in existence.

Third, Plaintiffs cannot hold Congresswoman Plaskett responsible for the acts of other people, such as Epstein or other defendants. To determine whether a defendant owes a duty to a plaintiff injured by a third party, the court must consider either: (1) the nature of the defendant's actual control over the third party's actions, or (2) a relationship between the defendant and the plaintiff requiring the defendant to protect the plaintiff from the conduct of others. *Stephanie L. v. House of the Good Shepherd*, 186 A.D.3d 1009, 1012 (4th Dep't 2020). "The central concern under both is whether "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the *best position* to protect against the risk of harm" *Id*. (emphasis in original). No allegations in the SAC give rise to any inference that satisfies either element.

*Doe 1* does not contravene these principles. *Doe 1* did not engage with any of the current case law concerning negligence for third party tortfeasors under New York law. *See Doe 1*, 671

9

F. Supp. 3d at 414.  But, the court in *Doe 1* found that the defendant bank's actions "set in motion" Epstein's sex trafficking operation by fueling it with nearly unlimited capital, despite significant red flags that the capital was being used wrongfully, even unlawfully.  *Id.* at 397-98.  The defendant banks in *Doe 1* could reasonably be said to have been in a central, if not the best, position to protect against the risk of further harm.  No such facts or allegations exist here.

Finally, the Opposition makes clear how thoroughly Plaintiffs rely on speculative fantasy.  Plaintiffs have no answer to the fact that Congresswoman Plaskett had no authority over the myriad federal, state, and private employees whose purported negligence forms the basis of Count Five.  Plaintiffs argue only that Congresswoman Plaskett could have "exert[ed] her influence" on these unnamed individuals.  Plaintiffs speculate that if "low-level" employees responded to the governor's wife, "there is no reason to conclude that these same individuals could not respond to Plaskett's influence." (Opp., p. 73).  Such hypothetical musings do not amount to well-pleaded allegations supporting a cause of action.

**VII.   The Court Should Issue an Order Dismissing Plaintiffs RICO Claims with Prejudice.**

Plaintiffs have not filed a notice of dismissal pursuant to Federal Rule of Civil Procedure 41 to withdraw Count Four.  Congresswoman Plaskett thus requests an order dismissing Count Four, alleging violations of RICO and a RICO conspiracy.

Dated: August 26, 2024
    New York, New York               **DUANE MORRIS, LLP**

                                            /s/ Eric R. Breslin
                                          Eric R. Breslin
                                          Melissa S. Geller
                                          1540 Broadway
                                          New York, NY 10036-4086
                                          (212) 212-692-1000
                                          erbreslin@duanemorris.com
                                          msgeller@duanemorris.com
                                          *Attorneys for Defendant Stacey Plaskett*