

Admitted:

† New York
⌘ Pennsylvania
• New Jersey
☼ U.S. Virgin Islands
◊ Dist. Ct. of Puerto Rico

**Daniel Cevallos, Esquire**

O: 917.699.5008
F: 215.689.4375
Danny@CevallosWong.com
www.CevallosWong.com

October 4, 2024

Hon. Arun Subramanian
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

Re:    *Does 1-6 vs. Gov. John de Jongh [Jr.], et al.*, 1:23-cv-10301-AS

Dear Judge Subramanian:

We represent defendant Gov. John de Jongh, Jr. ["JdJ"]. We submit this "supplemental briefing on a topic discussed at the conference" pursuant to this Court's Order [ECF # 172], and to "highlight[] particular cases or arguments" including those made at the conference by plaintiff's counsel. We also join in and incorporate the other arguments made by the co-defendants in their respective letter submissions. While JdJ has elected to focus here primarily on venue arguments, JdJ still maintains that the Second Amended Complaint ["SAC," ECF # 112] should be dismissed for the reasons argued by JdJ and the other defendants. If it is not dismissed, including for improper venue, the case should be transferred to the District of the Virgin Islands ["D.V.I."].

## I. PLAINTIFFS' INADEQUATE RESPONSES TO VENUE QUESTIONS

This case should be dismissed or transferred because plaintiffs filed this case in the wrong venue [28 U.S.C. §§ 1406(a); 1391(b)] and this Court lacks jurisdiction [28 U.S.C. § 1631]. Even if venue is proper in the SDNY, the case should still be transferred pursuant to 28 U.S.C. § 1404(a). The Court addressed the venue issues at the hearing, asking plaintiffs' counsel:

> Mr. Merson, let me just ask you a practical question. You could avoid all of these personal jurisdiction issues simply by filing this case in the U.S. Virgin Islands or by consenting to transfer to the U.S. Virgin Islands. Is there a reason why you don't want to do that? Tr., 50-51.

The Court appears to have determined that the first part of the two-part test under 28 U.S.C. § 1404(a) is satisfied: the case "might have been brought in the transferee venue [the USVI]." *Fransway v BAC Servicing*, 2014 WL 1383260, at *1 [SDNY 2014]. Mr. Merson did not dispute that the case might have been brought in the USVI either. Instead, Mr. Merson responded claiming "there's a whole bunch of reasons [why plaintiffs didn't file in the USVI]" [Tr., 51]. But in fact, that "bunch of reasons" does not support venue in the SDNY.

### A. Conclusory Statements about Fear of the D.V.I.

Mr. Merson's lead argument was a conclusory assertion that all plaintiffs are "afraid to go back to" the D.V.I.

Case 1:23-cv-10301-AS    Document 178    Filed 10/04/24    Page 2 of 6

DOES 1-6 vs. GOV. JOHN DE JONGH [JR.], ET AL.                    DEFENDANT JDJ'S POST-HEARING LETTER BRIEF

> MR. MERSON: The main [reason] is we have clients who are afraid to go back to the U.S. Virgin Islands and litigate their case there. Tr. at 51.

First, Mr. Merson's conclusory statement that the plaintiffs are afraid to go back to the USVI is not evidence. *See Big Vision v E.I. DuPont De Nemours*, 1 F.Supp.3d 224, 255 n. 36 [SDNY 2014] [noting the lack of any "evidence in the record" supporting a party's allegations, "other than counsel's conclusory assertions at oral argument, which of course is not evidence."]; *LCM XXII v Serta Simmons Bedding*, 2021 WL 918705, *4 [SDNY 2021] ["statements at oral argument are not evidence."].

Second, a plaintiff's apprehension about litigating in a forum where she was injured cannot categorically render the forum improper—especially because the situs of the incident is normally the basis for venue. In *Pejcic v Choice Hotels Int'l*, the plaintiff brought claims related to sexual assault against the defendant, who sought a venue transfer pursuant to 28 U.S.C. § 1404(a). The "plaintiff ma[de] the conclusory assertion that 'San Juan, Puerto Rico, is not the proper forum for this matter.'" 2019 WL 13234105, at *3 [S.D.Fla. 2019]. And in "response to defendants' analysis of the public and private factors under section 1404(a), Plaintiff merely state[d] she 'suffered severe physical and emotional trauma at the hands of defendants in San Juan, Puerto Rico, [and so] should not be forced to litigate in Puerto Rico....'" *Id*. The district court concluded that, "in short, plaintiff fail[ed] to aid the Court in any other respect in explaining why a transfer of venue should not be granted." *Id*. Similarly, in *Montante v LaHood*, the district court granted the defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a). The plaintiff opposed, "summarily stat[ing] that she fear[ed] emotional and physical harm from an unknown public that may disagree with her case." 2013 WL 12184149, at *4, n.2 [S.D.Cal. 2013]. However, "[b]ecause Plaintiff d[id] not explain why she fear[ed] such harm in the [transferee] District, the Court d[id] not afford strong weight to Plaintiff's contention." *Id*. Mr. Merson's lead argument against transfer is his conclusory assertion in open court that the plaintiffs all fear returning to the USVI. This statement is not evidence, and not a sufficient ground for opposing a venue transfer (or dismissal).

### B. *"Everything" Did Not Happen in New York*

Mr. Merson stated that the second reason the plaintiffs chose not to file in the SDNY was that "…with respect to Epstein, everything has happened in New York. Where was Epstein -- where did Epstein die? Where was he supposed to stand trial?" Tr., 51. Later, Mr. Merson repeated: "*Everything* has happened in New York." [Tr., 53:10, emphasis added]. At another point, Mr. Merson qualified this position somewhat, asserting: "Everything occurred in New York except the actual sexual abuse." Tr. at 51 [apparently admitting *no* alleged sexual abuse occurred in New York]. Plaintiff's position at oral argument is directly refuted by the plaintiffs' own Opposition, and the SAC itself. In their Opposition, the plaintiffs concede that "the *immunity* afforded to Epstein [also occurred] in [the] USVI." [ECF # 148-1, at 10, emphasis added]. Taken together, the plaintiffs concede that the abuse *and* the acts of many (mostly John Doe defendants) conferred immunity on Epstein, all in the USVI.

But the SAC itself ultimately conflicts with counsel's in-court statements and their own Opposition. The SAC alleges substantial conduct exclusively in the USVI. For example, the defendant John Does 1-100 constitute 92% of the 108 defendants. Everything the SAC alleges the John Doe defendants did necessarily occurred only in the USVI. This is because the SAC alleges their conduct as "USVI customs agents and/or officers," [¶ 51]; "[USVI] air traffic



Case 1:23-cv-10301-AS   Document 178   Filed 10/04/24   Page 3 of 6

DOES 1-6 vs. GOV. JOHN DE JONGH [JR.], ET AL.          DEFENDANT JDJ'S POST-HEARING LETTER BRIEF

controllers…and…employees of the USVI" [¶ 52]; "airport baggage check agents employees of the USVI [¶ 53]; "employees of the USVI;" [¶ 54]; and "[USVI] coast guard agents" [¶ 55].

There are many other examples of substantial conduct (in addition to the sex abuse) alleged to have occurred exclusively in the USVI. For example, SAC ¶ 126 alleges no sexual assault, but instead alleges Jane Doe 3 and Epstein's substantial interactions with unidentified USVI officials in the USVI to procure travel documents in the USVI. The SAC alleges that "U.S. Customs officials on the USVI never examined either the passports or luggage of anyone arriving on Epstein's private jet." SAC ¶ 169. "USVI officials directed law enforcement officers, airport personnel, customs officials, and any other government employees to extend any courtesy or assistance to Epstein, and his affluent customers and guests as part of their official duties." SAC ¶ 173. All of these things happened only in the USVI. The alleged efforts to protect Epstein, procure his travel documents, communications with (nonparty) customs, airport, and other officials, occurred nearly entirely in the USVI, *according to the SAC*. The SAC itself negates Mr. Merson's assertion that "*Everything* has happened in New York." Nearly "everything" occurred in the USVI, according to the SAC. *See, e.g., Kreinberg v Dow Chemical Co.*, 496 F.Supp.2d 329, 331 [SDNY 2007] [transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are located there"]; *In re Collins & Aikman Corp. Sec. Lit.*, 438 F.Supp.2d 392, 395-397 [SDNY 2006] [transfer motion granted where numerous party and non-party witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum is where the subject conduct alleged happened]. In this case, the ties to the USVI outweigh any connection this litigation may have to New York.

### C. Plaintiffs' Counsel Admits to Forum-Shopping

The "third reason" Mr. Merson offered for why the plaintiffs filed in the SDNY instead of the D.V.I., was that "if the case is bumped to the U.S. Virgin Islands, the next thing you are going to hear is that the cases should have a $25,000 limit under the Virgin Islands Tort Act. So that is clearly inadequate compensation for my clients." [Tr., 53:10-14]. Mr. Merson admits to forum-shopping in the SDNY for advantageous state law. However, Mr. Merson is wrong on the law that will apply. It is true that "[a]fter a transfer from an improper venue to a proper venue under § 1406(a), the transferee court applies its own law as if the case had been originally filed there (i.e., the plaintiff does not get the benefit of forum shopping)." *Grant v Kia Motors*, 2014 WL 6680686, *2 [M.D.Tenn. 2014] (*citing GBJ v E. Ohio Paving*, 139 F.3d 1080, 1085 [6th Cir.1998]. "If the state law of the forum in which the action was originally commenced is applied following a § 1631 or § 1406(a) transfer…the plaintiff would benefit from having brought the action in an impermissible forum." *Choquette v Sanfilippo*, 2001 WL 1266305, *4 [D.Conn. 2001]. As the Sixth Circuit in *Martin v Stokes* recognized, "[p]laintiffs would thereby be encouraged to file their actions in the federal district court where the state law was most advantageous, regardless of whether that district court was the proper forum. *Id*. If venue is improper in the SDNY, plaintiffs were never entitled to NY law to begin with. They have lost nothing. In that event, plaintiffs would not be harmed by the D.V.I. applying USVI law.

However, if the Court determines venue was proper in the SDNY, but transfers for convenience, "a court receiving a matter from a transferor court under § 1404(a) applies the law of the transferor court." *Kelly-Brown v Winfrey*, 2013 WL 6574918, *1 [SDNY 2014], "i.e., the plaintiff gets the benefit of forum shopping." *Grant*, 2014 WL 6680686, *2. So, if the case is transferred, Mr. Merson's clients may still seek the benefit of the New York law they perceive as more advantageous.



### D. *Epstein and Wealthy Abuser Friends are Not Parties*

While the SAC alleges substantial conduct by Epstein and his wealthy abuser friends, none of them are named defendants. The SAC fails to allege a sufficient nexus (conspiracy or otherwise) between the named defendants and Epstein (and his abuser friends). Without this nexus, the plaintiffs cannot use nonparty conduct as a jurisdictional hook upon JdJ and the other named USVI defendants. If the SAC does allege a conspiracy, at best it alleges a conspiracy by *nonparties*, and *not* JdJ or the named defendants in this case.

### E. *Sexual Abuse is the Most Substantial Part of the Case*

Mr. Merson's argument that "everything occurred in New York except the actual sexual abuse," [Tr. at 51] minimizes the fact that the alleged sexual abuse is *the* most substantial part of the case. *Gray v Acadia Healthcare*, 408 F.Supp.3d 1250, 1255 [D.N.M. 2019] [venue proper in district where rape occurred]; *Goldschmied v Brifil*, 2018 WL 6430545, *4 [C.D.Cal. 2018] [venue proper where sex harassment and assault occurred]. *Gerson v Logan River Acad.*, 2020 WL 473134, at *3 [C.D.Cal. 2020] ["Although [plaintiff] was kidnapped from California and transported to Utah, each of her claims stem from the alleged sexual child abuse that took place at Logan's academy…Accordingly, the operative facts did not substantially occur in the forum selected by [plaintiff]. Moreover, because [plaintiff] was sexually abused in Utah, the subject matter of the litigation is not substantially connected to California…Therefore, the Court finds that [plaintiff's] choice of forum is diminished and is entitled to only minimal consideration"]; *Chesapeake Climate Action Network v Exp.-Imp. Bank*, 2013 WL 6057824, *2 [N.D.Cal. 2013] ["noting that deference to plaintiff's choice of forum is substantially reduced where the forum lacks a significant connection to the activities alleged in the complaint...even if the plaintiff is a resident of the forum"].

### F. *SAC: 107 Defendants, Evidence, and Incident Sites in USVI*

Each of the 108 defendants, including John Does 1-100, are potential witnesses. They are all located in the USVI (save Plaskett). All their evidence and documents located in the USVI. Furthermore, the SAC identifies critical locations in the USVI, which may be the location of documents, the subjects of inspection during discovery, or even a site visit at trial. These include Cyril King Airport in St. Thomas [SAC ¶¶ 6, 22, 53, 58, 97, 101, 104, 114, 166, 168, 173, 174, 273, 280, 281, 317, 332, 333]; Epstein's private island [SAC ¶¶ 126-127]; and the harrowing allegations of abuse at Epstein's Red Hook office in the USVI [SAC ¶¶ 123-124]. *See, Millennium v Hyland Software*, 2003 WL 22928644, *4 [SDNY 2003] ["Although it is likely that all relevant documents can be transported from state to state in some fashion, for purposes of deciding transfer, the fact that the documents are all currently located in Ohio favors transfer [to Ohio]"]. *Royal Ins. v U.S.*, 998 F.Supp. 351, 353–54 [SDNY 1998] ["While photos or videotapes of the scene could be introduced at trial in any forum, an inspection of the site…by the trier of fact could only be accomplished if the case were tried in California."] (*citing Dicken v US*, 862 F.Supp. 91, 94 [D.Md.1994] [transfer to district where tort occurred for viewing of incident sites].

### G. *Court Empowered to Transfer Even if No Personal Jurisdiction*

Even if the Court determines it does not have personal jurisdiction over the defendants, it may still transfer this case to the D.V.I. This "Court has the power to transfer this suit to a district where it might have been brought even though [the Court] does not have personal jurisdiction



Case 1:23-cv-10301-AS    Document 178    Filed 10/04/24    Page 5 of 6

DOES 1-6 vs. GOV. JOHN DE JONGH [JR.], ET AL.                    DEFENDANT JDJ'S POST-HEARING LETTER BRIEF

over defendants." *Baker v Bennett*, 942 F.Supp. 171, 177–78 [SDNY 1996] (*citing Goldlawr v Heiman*, 369 U.S. 463 [1962]).

## II. SOVEREIGN IMMUNITY APPLIES TO GOV. JDJ

JdJ joins in the GVI and other defendants' sovereign immunity arguments. Territorial sovereign immunity applies not only to the GVI, but also to individuals sued in their official capacities as territorial officials. *Mallon v NYS Off. of Mental Health*, 2011 WL 13521200, *11 [SDNY 2011].

## III. RESPONSE TO PLAINTIFFS' CPLR 302(A)(1) PERSONAL JURISDICTION ARGUMENT

In their 10/4/2024 letter brief [ECF # 177] plaintiffs continue to argue that "receiving a single payment in another state without maintaining a [NY] account give [sic] rise to jurisdiction." *Id.* Again, this is not *always* true. It *can* be true, based on the nature of the financial relationship. Plaintiffs cite to *First Manhattan Energy v Meyer*, 150 AD3d 521, 521-22 [1st Dept 2017]. But Meyer "was designated in the escrow agreement as the Assigned Escrow Agent," and "he accepted the funds pursuant to the agreement." This is very different from a defendant receiving payment from Epstein that happens to come from a NY bank, especially when it's simply not plausible that any defendant requested money from a *NY* bank account.

## IV. NOT PLAUSIBLE THAT DEFENDANTS REQUESTED MONEY SPECIFICALLY FROM NY ACCOUNTS

Plaintiffs argue in their letter brief that "requesting money from New York accounts in exchange for unrestricted trafficking of New York women, with their New York customers, via a New York plane – is sufficient" for personal jurisdiction. It is not plausible that defendants requested money specifically from NY bank accounts, or knew, or cared from what state the money came. It's also not plausible that defendants specifically knew that the customers were *NY* customers or that the plane was a *NY* plane. Indeed, the SAC itself alleges that the conduct happened in "New York, Florida, USVI, and around the world." SAC ¶¶ 301-305. The SAC also alleges the defendants sought "access to money and influential people from around the world," [¶ 209] and not just NY. Plaintiffs' argument of targeted NY conduct in their letter brief is directly contradicted by the allegations in the SAC.

The alleged payments and conclusory statements are insufficient to show that the defendants solicited money specifically from *NY* bank accounts. *Rosner v BOC*, 349 Fed.Appx. 637, 639 [2d Cir.2009] (finding a lack of factual allegations that point to actual knowledge of the fraudulent source of the deposited money since the bank's relationship with the perpetrators of the underlying fraud did not extend beyond a banking relationship). *In re Agape Litig.*, 773 F. Supp. 2d 298, 317 [EDNY 2011] (a banking relationship alone is insufficient to show that the funds held at the bank were obtained through fraudulent means).

Defendant JdJ respectfully requests that the SAC be dismissed, or, in the alternative, transferred to the District Court of the Virgin Islands, St. Thomas vicinage.

By:
Daniel L. Cevallos


CEVALLOS & WONG LLP

Case 1:23-cv-10301-AS    Document 178    Filed 10/04/24    Page 6 of 6

DOES 1-6 vs. GOV. JOHN DE JONGH [JR.], ET AL.                    DEFENDANT JDJ'S POST-HEARING LETTER BRIEF

## AFFIRMATION OF SERVICE

The undersigned hereby affirms that on **October 4, 2024**, a copy of the foregoing was uploaded to the Court via CM-ECF, which will send a notice of electronic filing to all parties of record.

By: 

Daniel L. Cevallos

